## HARVEY ET AL. v. RODGER.

[No. 11,521.   Filed February 28, 1924.   Rehearing denied June
10, 1924.   Transfer denied April 7, 1926.]

1.  APPEAL.—*In the absence of the evidence heard by the court
on an application to have appointment of guardian set aside,
correctness of record showing filing of answer to the petition
for appointment of guardian, in which appointment was re-
quested, cannot be challenged.*—On appeal from the denial of
an application to have the appointment of a guardian set aside,
in the absence of the evidence heard by the court, the correct-
ness of the record showing the filing of an answer to the
petition for the appointment of the guardian, in which it was
stated by the defendant that, on account of physical infirmities,
an emergency existed for the immediate appointment of a
guardian and that she desired the court to make such an ap-
pointment forthwith, cannot be challenged, as the record im-
ports absolute verity.   p. 414.

2.  APPEAL.—*Evidence presumed to have authorized nunc pro tunc
order made on application therefor, in absence of the evidence
heard.*—In the absence of the evidence heard by the court on
an application for a *nunc pro tunc* entry of court proceedings,
it will· be presumed on appeal from the order granting the
request that the action of the court was sustained by the evi-
dence heard.   p. 414.

3.  APPEAL.—The entry of a judgment *nunc pro tunc* does not
extend the time for taking an appeal from the judgment.   p. 415.

4.  APPEAL.—*Appeal cannot be taken from order appointing
guardian after expiration of time for appeal, although a judg-
ment nunc pro tunc was thereafter entered.*—An appeal can-
not be taken from an order directing the appointment of a
gurdian for an aged person because of physical infirmity
where the time for taking an appeal therefrom had
expired although a judgment *nunc pro tunc* was thereafter
entered showing the proceedings resulting in such appointment,
including a formal judgment making the appointment.   p. 415.

5.  GUARDIAN AND WARD.—*Service of summons on defendant by
unauthorized person in proceeding for the appointment of
guardian gives the court no jurisdiction to appoint guardian.*—
In a proceeding for the appointment of a guardian under §3442

*et seq.* Burns 1926, §3111a *et seq.* Burns 1914, the service of a summons for the defendant by any person other than the sheriff or his deputy gives the court no jurisdiction to appoint such guardian. p. 417.

6. GUARDIAN AND WARD.—*Jurisdiction to appoint a guardian can only be acquired by the issuance of a summons to and service by the sheriff or the voluntary appearance of the defendant.*—Jurisdiction of a defendant in an action to have a guardian appointed because of old age, infirmities, etc., under §3442 Burns 1926, §3111a Burns 1914, can only be acquired by the issuance of a summons to the sheriff and service thereof by him or the voluntary appearance of the defendant in open court. p. 419.

7. GUARDIAN AND WARD.—*Answer filed in guardianship proceeding asking the immediate appointment of a guardian will be presumed to have been filed by someone with authority to file it.*—On appeal from an order denying an application to set aside the judgment appointing a guardian under §3442 Burns 1926, §3111a Burns 1914, it will be presumed that an answer filed in the proceeding on behalf of the defendant asking the immediate appointment of a guardian, signed and sworn to by her, was filed by someone who had authority to file it. p. 419.

8. JUDGMENT.—*Diligence is necessary on the part of a party seeking relief from a judgment, and laches will preclude relief.*—A party seeking relief from a judgment must be diligent, and if he is guilty of laches, relief will be denied. p. 421.

9. APPEARANCE.—Jurisdiction of the person can be had by voluntary appearance by attorney and submission to the authority of the court. p. 421.

10. APPEARANCE.—An appearance by a defendant is a waiver of service of process and of all defects in the process or the service thereof. p. 422.

11. APPEARANCE.—The rule that a general appearance, in person or by attorney, is a waiver of service of process is applicable to proceedings for the appointment of guardians. p. 422.

12. GUARDIAN AND WARD.—*In support of action of court in refusing to vacate judgment appointing guardian, it will be presumed that answer was filed by attorney with authority.*— In support of the action of the court in refusing to set aside a judgment appointing a guardian for an old and infirm person under §3442 Burns 1926, §3111a Burns 1914, it will be presumed that an answer filed in the proceeding to appoint a guardian was filed by attorney with authority to do so, and, therefore, there was no necessity for the clerk and the prosecuting attorney to take any action therein. p. 423.

Harvey *v.* Rodger—84 Ind. App. 409.

13. GUARDIAN AND WARD.—*In proceeding for appointment of guardian for old or infirm person, clerk and prosecutor are required to act only when defendant not represented by counsel.*—In a proceeding under §3442 Burns 1926, §3111a Burns 1914, to have a guardian appointed because of old age, infirmity, etc., when the defendant is not represented by counsel, it is the duty of the clerk to deny the facts alleged in the complaint and for the prosecuting attorney to appear for and represent the defendant, but they are not required to act when there is an appearance by counsel. p. 424.

14. GUARDIAN AND WARD.—*Under §3442 Burns 1926, a guardian may be appointed for person who is not of unsound mind.*—In a proceeding under §3442 Burns 1926, §3111a Burns 1914, to have a guardian appointed, it is not necessary that the person for whom a guardian is asked shall be of unsound mind; it being one of the purposes of the statute to provide for the appointment of guardians for persons who are not of unsound mind. p. 427.

15. GUARDIAN AND WARD.—*Old age or infirmity alone is not sufficient to warrant the appointment of a guardian under §§3442, 3443 Burns 1926.*—Under §§3442, 3443 Burns 1926, §§3111a, 3111b Burns 1914, old age or infirmity alone is not sufficient to warrant the appointment of a guardian, but the infirmity must be such as renders the person "incapable of managing his estate or business affairs." p. 428.

16. GUARDIAN AND WARD.—*In the absence of evidence in proceeding to have guardian appointed for an old person, appellate tribunal will not disturb judgment appointing guardian where court had jurisdiction of the person of the defendant and time for appealing from it has expired, although it is conceded there was no evidence of mental incapacity.*—In a proceeding for the appointment of a guardian for an old person under §3442 Burns 1926, §3111a Burns 1914, where the court had jurisdiction of the person of the defendant by reason of her entering an appearance therein, the order making the appointment was not void although there was no evidence of mental incapacity, and on appeal from a denial of an application to set aside the judgment, in the absence of the evidence, the judgment will not be disturbed after the expiration of the time for appealing from the judgment appointing the guardian. p. 429.

From Madison Circuit Court; *William A. Kittinger,* Judge.

Proceeding by John C. Rodger for the appointment of a guardian for Lena Leota Harvey, in which a guardian

was appointed. An application by said Harvey to set aside the judgment appointing the guardian was denied, and she appeals. *Affirmed.* By the second division.

*Guy R. Ayres, R. L. Ewbank, Gideon W. Blain, Ralph K. Kane* and *Robert Hollowell, Jr.,* for appellants.

*Joseph Dickey* and *Diven, Diven &. Campbell,* for appellee.

McMahan, J.—Appellee filed his complaint in the Madison Circuit Court January 17, 1921, alleging that appellant was an inhabitant of that county and was incapable of managing her estate because of old age and infirmities, and asking for the appointment of a guardian. The record shows that without a summons being served on her by the sheriff, or by any other person authorized to serve a summons, she filed an answer January 21, 1921, alleging that, "on account of physical disability, she is unable to appear in person at said court; that she is of sound mind and disposing memory, but that, on account of her present physical infirmities, an emergency exists for the immediate appointment of a guardian of her person and estate; and that it is her desire that a guardian of her person and estate be appointed forthwith," and asking the court to appoint appellee as such guardian. This answer was sworn to by appellant before Guy R. Ayers, a notary public, and who, we assume, was one of the attorneys who signed said complaint as attorney for appellee, although there is nothing in the record to that effect, other than what may be inferred from the petition of appellant to vacate and set aside the appointment of appellee as her guardian. Immediately upon the filing of this answer, the matter was submitted to the court and, after hearing the evidence, the court found that appellant was a resident of Madison county, that she had an estate, that

on account of physical infirmities she was unable to look after her estate, and it was decreed that a guardian should be appointed for her, because of her physical infirmities. Appellee, on said last named day, was appointed her guardian, his bond having been fixed at $60,000.

On November 28, 1921, appellant filed her motion to set aside said judgment and appointment, and, on December 14, 1921, she filed her amended motion for that purpose. In this amended motion, appellant alleged that she had never been served with summons; that the judgment was taken against her without her knowledge or consent; that the attorney who appeared for her in said matter had no authority from her; that the judgment was taken when she was not present in court and when no answer had been filed by her. It also alleged that said judgment had been procured by reason of the fraudulent conduct of one of *her* attorneys upon whom she relied; that the complaint filed for the purpose of having the guardian appointed was filed by *her* said attorney upon whose alleged wrongful conduct she relied; that this same attorney, through fraud, induced the court to render the judgment against her. A meritorious defense is alleged and also that the motion to set aside was filed as soon as she discovered the judgment had been taken against her.

January 9, 1922, appellee filed his motion, in which it was alleged that the petition heretofore referred to for the appointment of a guardian for appellant came on for hearing January 21, 1921; that appellant's verified answer to said petition was filed on said day, in which she acknowledged her physical infirmities and asked for the immediate appointment of a guardian; that the cause was heard and tried by the court and that the court appointed appellee her guardian and the exist-

ence of certain written memorials of the facts is alleged; that the clerk had failed to enter the proceedings on the records and asking for an order *nunc pro tunc.*

Appellant's motion to set aside the judgment and appointment of the guardian, and appellee's motion for an entry *nunc pro tunc* were submitted to the court for trial February 13, 1922. The court, after hearing the evidence, found against appellant on her motion to set aside the judgment and in favor of appellee on his motion for an entry *nunc pro tunc,* and judgment was entered accordingly, to which rulings, appellant excepted. No motion for a new trial was filed and the evidence is not in the record.

From the action of the court in refusing to set aside the judgment and appointment of the guardian and in sustaining appellee's petition for an entry *nunc pro tunc,* appellant appeals. The errors assigned are that the court erred: (1) In overruling appellant's motion to set aside the judgment and appointment of a guardian; (2) in sustaining appellee's motion for an entry *nunc pro tunc.*

Appellant concedes that the evidence is not in the record and that the evidence introduced was sufficient to sustain the action of the court if the court had jurisdiction of her person and of the subject-matter of appellee's petition asking for the appointment of a guardian of her person and estate.

The record shows the filing of appellee's petition for the appointment of a guardian, that appellant filed her verified answer thereto, and that the court, after 1, 2. hearing the evidence, found for appellee and appointed him guardian. The correctness of the record showing the filing of the answer, the trial and judgment as shown by the entry *nunc pro tunc* is not and cannot, in the absence of the evidence, be challenged

on this appeal. So far as this appeal is concerned, the record imports absolute verity and we must assume that appellant filed her verified answer to the petition asking for the appointment of a guardian, in which she stated that, on account of her physical infirmities, an emergency existed for the immediate appointment of a guardian and that she desired the court to make such an appointment forthwith. This answer was signed by appellant and sworn to by her January 20, 1921, before her present attorney, Guy R. Ayres, notary public. We are not advised as to whether this answer was filed by appellee in person or by attorney, other than as is shown by the record, which states that the "defendant Lena L. Harvey filed her verified answer to the complaint in these words," and then sets out the answer in full. In the face of this record, we cannot say it was not filed or that it was filed by an unauthorized person. No reversible error is shown in the action of the court in sustaining appellee's motion for an entry *nunc pro tunc*, as we are bound to presume the evidence was sufficient to warrant the amendment of the record. *Boonville Nat. Bank* v. *Blakey* (1906), 166 Ind. 427, 435.

Appellant says her appeal is not from the mere sustaining of the motion for a *nunc pro tunc* entry, but that the appeal is from the final disposition of the case by the judgment rendered after sustaining the motion *nunc pro tunc*. If by this, appellant means her appeal is from the judgment appointing the guardian, her contention cannot prevail. The entering of a judgment *nunc pro tunc* does not extend the time within which an appeal can be taken. *Mayer* v. *Haggerty* (1894), 138 Ind. 628. There was no judgment from which appellant could appeal other than the judgment denying her motion to vacate and the judgment authorizing the entry *nunc pro tunc*. The judgment

appointing the guardian was rendered January 21, 1921. An appeal from that judgment could not be taken after 180 days from the date thereof, and this appeal can only be considered as an appeal from the judgment refusing to set aside and vacate the judgment appointing a guardian and correcting the record *nunc pro tunc*. The transcript in this appeal was filed July 26, 1922.

The statute under which the petition for the appointment of a guardian for appellant was filed was enacted in 1911. Acts 1911 p. 533, §3442 *et seq*. Burns 1926, §3111a *et seq*. Burns 1914. The first section of that act was amended in 1919, Acts 1919 p. 520, and, as amended, reads as follows: "Whenever any person shall file his complaint in the court having probate jurisdiction in any county, to the effect that any inhabitant of such county is incapable of managing his estate or business affairs because of old age, infirmity, improvidence, or being a spendthrift, such court shall cause not less than ten (10) days' notice of the filing of such complaint to be given such person by a summons issued by the clerk to the sheriff of said county. In all cases where the party is not represented by counsel, and no appearance of counsel has been intered [entered] in the appearance docket of such court at the expiration of the time fixed in the summons for the return of such service, it shall be the duty of the clerk of said court to deny the facts set forth in such complaint as to such disability, which issue shall be tried as the issues in civil actions are tried, by the court, or by a jury, to be impaneled under the direction of said court, and it shall be the duty of the prosecuting attorney of said county to appear for such person and to protect the interests of such person."

Appellant contends that her motion to set aside the judgment should have been sustained because: (1) The court had no jurisdiction over her person; and (2)

it had no jurisdiction to appoint a guardian because of "physical infirmities."

In reference to the first contention, we do not know what evidence was introduced concerning the filing of the answer and her appearance. We do know

5. that a summons was issued for appellant on January 17, requiring her to appear January 27, 1921, and that an answer was filed to the complaint asking for the appointment of the guardian. This summons is not shown to have been delivered to the sheriff for service and, so far as the record shows, it was not served by him or by any other person authorized by him to serve the same. This summons and the indorsements on the back thereof are in the record. On the back of this summons, is the affidavit of Guy R. Ayers stating that he served the same on appellant by reading the same to her January 17, 1921. There is also a statement on the back of this summons reading as follows: "I, Lena Leota Harvey, defendant in this action acknowledge service of this summons and waive the issuance of any other summons or process on me in this cause. That on account of physical disability I am physically unable to attend the trial of this cause on 27th day of January, 1921. That I am of sound mind and disposing memory and desire a guardian appointed for me on account of my present physical infirmities." It appears that, for some reason not disclosed by the record, appellant did not want to wait until the return day for the appointment of the guardian, so, on January 20, she signed the answer heretofore referred to and swore to the same. What she then did with this answer, or to whom she gave it, is not disclosed, but we do know that, on the next day, it was filed in the cause and was actually placed in the hands of the trial judge, as it appears that on January 21, he made a memorandum

on the back thereof relative to the appointment of the guardian. The summons and the alleged service thereof by Ayers will be ignored in the consideration of this appeal in so far as the question of jurisdiction of the person of appellant is concerned, as he had no authority to serve the same. While such service gave the court no jurisdiction over the person of appellant, the facts surrounding such alleged service, together with the indorsements on the back of the summons, would have been proper items of evidence for the court to consider on the hearing of appellant's motion to set aside the judgment.

Appellant in her motion to vacate the judgment alleged that it was taken against her without her knowledge and consent. We are unable to reconcile this allegation with the prevailing theory of her motion, viz., that she was induced to consent to such appointment through fraud. The motion of appellant does not allege any fraud on the part of appellee. The charge is that one of the attorneys who signed the complaint as attorney for appellee was, at the time when the proceedings to have appellee appointed guardian were had, appellant's attorney, and while acting as her attorney and prior to such appointment, made certain alleged false statements to her and to her "main counsel" relating to the appointment of a guardian, and that she and her "main counsel," believing and relying upon the truthfulness of such statements, consented to such appointment. The most reasonable inference to be drawn from the allegations in this motion is that appellant and her attorneys agreed among themselves that some person should be appointed guardian for her in order to look after certain litigation then pending in the Floyd Circuit Court and that her attorneys, acting in her behalf, prepared the complaint asking for the appointment of the guardian and signed the same as attorneys for

appellee. We know nothing about what took place after the guardian was appointed and prior to the filing of the motion to set such appointment aside. She alleged that, prior to the appointment, she had commenced proceedings in the Floyd Circuit Court to set aside and vacate the appointment of an administrator of her husband's estate on the ground that such administrator had been wrongfully appointed. The evidence may have shown the appointment of appellee as guardian was procured by appellant through counsel employed by her, and that the guardian, through her attorneys, conducted the litigation in the Floyd Circuit Court to a final judgment, secured the appointment of an administrator of her own selection and that she thereafter recognized the appointment of appellee, who, during that time, may have taken charge of her property or received the same as guardian and turned it, or a part of it, over to appellant who may have had full knowledge of all such facts. Under such circumstances, the court would have been justified in refusing to set aside the appointment on the ground that appellant had failed to prove that the appointment was made without her knowledge or consent or because of the alleged fraud of her attorney.

Appellant also contends that §3442, *supra,* must be strictly construed and that jurisdiction over a defendant in an action to have a guardian appointed

6. because of old age, or infirmities, can only be had by the issuance and service of a summons by the sheriff or by the voluntary appearance of the defendant in open court. This may be conceded, but, as before stated, the record shows the filing of an answer. This, as will be hereafter shown, amounted to an appearance.

On the question of laches, appellant alleged that immediately upon her discovery that a judgment

7. had been taken against her she moved the court to set aside and vacate the appointment of appel-

lee as guardian and that she had not been guilty of any laches or unnecessary delay in asking for relief from the judgment. It would seem that the advisability of having a guardian appointed had been a subject of discussion between appellant and her attorneys both before and after the complaint for that purpose was filed. While she alleged the judgment had been taken without her knowledge or consent and that she filed her motion immediately after she learned the judgment had been taken, she fails to state when she first learned the judgment had been taken and the guardian appointed. The record shows the complaint asking for the appointment of the guardian was filed January 17, 1921, and, on that day, one of the attorneys representing her on this appeal and who, we infer, was her main counsel at that time, made oath that he read the summons to her. On the back of this summons, is a statement signed by appellant and witnessed by the same attorney, in which she undertakes to acknowledge service of summons and to waive the issuance of any other process and states that, on account of physical disability, she will not be able to attend the trial January 27, that being the return day named in the summons, and that, although of sound mind, she desired to have a guardian appointed. Three days later, she signed and made oath to an answer in which she stated that, on account of her physical infirmities, an emergency existed for the immediate appointment of a guardian. This answer was also sworn to before Guy R. Ayers, notary public. This answer was produced in court, filed and presented to the judge January 21. By whom it was presented and filed is not disclosed, but, in the absence of any evidence on that question, the presumption is that it was filed by someone who had authority to file it. It was filed, and all presumptions are in favor of the regularity of its filing. Notwithstanding this answer asking for the im-

mediate appointment of the guardian, presumably because of the litigation then pending in Floyd county, appellant did nothing until November 28, 1921, when she filed her first motion to set aside the judgment and appointment.

It is the rule that a party seeking relief from a judgment must be diligent and not guilty of laches. The evidence introduced on the hearing of the motion to vacate may have shown that the guardian was, in fact, appointed at the instigation of appellant; that the attorneys who signed the complaint asking for such appointment were employed by her for that purpose; that she knew of the appointment immediately after it was made and that she stood by and for a period of ten months watched the guardian manage her estate and business, saw him conduct litigation in her behalf and for her benefit, possibly selling or disposing of personal property and real estate and turning the proceeds over to her for her support, and her acceptance of such proceeds with knowledge of all the facts. Under such circumstances, as was said in *Shafer* v. *Shafer* (1914), 181 Ind. 244, 249: "It would be unconscionable to condone such delay, where the result might embarrass or injure innocent purchasers." The Madison Circuit Court had jurisdiction over the subject-matter of appellee's complaint—the appointment of a guardian for appellant because of "old age and infirmity." This question was submitted to the court for trial. The court found that the material allegations of the complaint were true; that on account of her physical infirmities, appellant was unable to look after her estate and that because of her physical infirmities, it was not possible for her to appear in court in person, and that a guardian should be appointed. No attack was made by appellant in the lower court on the judgment and appointment of the guardian on the ground that the

court did not have jurisdiction of the subject-matter. Her contention there was that the judgment was void for want of jurisdiction over her person. In support of this contention, she says: "Jurisdiction of the person of a defendant in a civil action can only be had by the issuing of summons and service thereof in one of the modes prescribed by the statute or by voluntary appearance in person." If to this had been added, "or by attorney and submission to the authority of the court" we would concede it to be a correct statement of the law. *McCormack* v. *First Nat. Bank* (1876), 53 Ind. 466.

The purpose of notice is to enable the person proceeded against to appear and defend. *In re Blewitt* (1892), 131 N. Y. 541, 30 N. E. 587. As before stated, the reading of the summons by an unauthorized person was not notice, within the requirement of the law. While there is nothing in the record before us to indicate that the proceedings were instituted in bad faith, justice and the possible grave injuries which may flow from irregular proceedings in these cases admonish courts to guard them with great strictness and to observe all practical safeguards against fraud and injustice. We have concluded that this cause should be and can be affirmed without weakening the principle announced. It is provided by statute that the voluntary appearance of a defendant is equivalent to service. §333 Burns 1926, §318 Burns 1914. An appearance by a defendant is a waiver of service of process, and of all defects in the notice or service thereof. *Ramsey* v. *Foy* (1858), 10 Ind. 493; *Little* v. *Vance* (1860), 14 Ind. 22; *First Nat. Bank* v. *United States, etc., Co.* (1886), 105 Ind. 227. A defendant waives service of process by filing a demurrer to the complaint, *Singleton* v. *O'Blenis* (1890), 125 Ind. 151, by filing any formal plea or motion, *McCormack* v. *First Nat. Bank, supra,*

by filing a remonstrance in a ditch proceeding, *Kramer* v. *Fishback* (1913), 180 Ind. 178, by filing a restitution bond in an attachment proceeding, *Eberhart* v. *Eyre-Shoemaker* (1922), 78 Ind. App. 658, 134 N. E. 227. The rule is so general that a general appearance, in person or by attorney, or a plea to the merits, is a waiver of service of process, that further citation of authorities is not necessary. And this rule is applicable in proceedings for the appointment of guardians.

In *Soules* v. *Robinson* (1902), 158 Ind. 97, 92 Am. St. 301, the court, in discussing the question of jurisdiction of the person whose sanity was being questioned, said: "In such a case, if there was in fact no appearance, and the subject of the inquiry was not produced in open court, nor any notice given to or served upon him, and the record is silent as to such matter, although the judgment is not subject to collateral attack, it may be set aside by the court in which it was rendered on the application of any person who has a right to be heard."

It was held in *Foot* v. *Stevens* (1837), 17 Wend. (N. Y.) 483, that the courts of common pleas of that state were courts of general jurisdiction and, upon a motion for a new trial, it would be intended, in support of a judgment rendered in the court of common pleas, where nothing to the contrary was shown, that the court had jurisdiction of the person of the defendant, although there was no averment in the record showing the jurisdictional facts.

There being nothing in the record to show that appellant's answer was not filed by an attorney with full authority to do so, it will be presumed that it was. The presumption is that the court did its duty and that there was no necessity for the clerk to deny the facts set forth in appellee's complaint or for the prosecuting attorney to appear and resist the com-

plaint. See *Gridley* v. *College* (1893), 137 N. Y. 327, 33 N. E. 321, *Hutts* v. *Hutts* (1878), 62 Ind. 214.

*Nyce* v. *Hamilton* (1883), 90 Ind. 417, was a proceeding under §3425 Burns 1926, §3101 Burns 1914, to have a guardian appointed for a person of unsound mind. The clerk filed an answer as required by the statute. On petition for a rehearing, the court said: "We are bound to presume that the court proceeded in accordance with the law, and that the clerk filed the answer because, the appellant being in court, it was his duty so to do." Under §3425, *supra,* it is the duty of the clerk to form the issue by denying the facts in the statement, and of the prosecuting attorney to protect the interest of such person, while under §3442, *supra,* where the defendant is not represented by counsel, it is made the duty of the clerk to deny the facts alleged in the complaint, and of the prosecuting attorney to appear and defend and protect the interest of such person. *State, ex rel.,* v. *Madison Circuit Court* (1923), 193 Ind. 20, 138 N. E. 762.

Under §3425, *supra,* jurisdiction is acquired only by the appearance or by the production in court of the party for whom the guardian is sought, unless it is established to the satisfaction of the court that his production in court would be injurious to his health. *Jessup* v. *Jessup* (1893), 7 Ind. App. 573. Under §3442, *supra,* jurisdiction may be acquired by service of summons or by appearance. If the appearance is not by counsel, it becomes the duty of the clerk to deny the facts and for the prosecutor to defend. The clerk and prosecutor, however, are not required to act where there is an appearance by counsel.

It has been held, where notice is required to be given to certain relatives of the party whose lunacy is being investigated, that such relatives have no personal interest, that they represent the public and cannot con-

sent to a hearing prior to the return day. *Yeomans* v. *Williams* (1903), 117 Ga. 800, 45 S. E. 73. It has also been held that the appointment is void where the record shows that the proceedings were begun and concluded in one day, and there was an absence of the statutory notice to relatives. *Allen* v. *Barnwell* (1904), 120 Ga. 537, 48 S. E. 176. To the same effect, see *McGee* v. *Hayes* (1899), 127 Cal. 336, 59 Pac. 767, 78 Am. St. 57. To the contrary, holding a voluntary appearance cures want of notice, see *Rogers* v. *Walker* (1847), 6 Pa. St. 371, 47 Am. Dec. 470; *Evans* v. *Johnson* (1894), 39 W. Va. 299, 19 S. E. 623, 45 Am. St. 912; *Kimball* v. *Fisk* (1859), 39 N. H. 110, 75 Am. Dec. 213; *Moats* v. *Moore* (1916), 199 Ill. App. 270; *Hendricks* v. *Settle* (1899), 107 Ky. 344, 53 S. W. 1051; *In re Anderson* (1903), 132 N. C. 243, 43 S. E. 649. It has been held in Indiana, Illinois, Kansas, Kentucky, New Jersey, New York and Pennsylvania that want of notice is cured where the party appears and contests the proceedings. *Moats* v. *Moore, supra; Martin* v. *Motsinger* (1892), 130 Ind. 555; *Nyce* v. *Hamilton, supra; Hutts* v. *Hutts, supra; In re Wellman* (1896), 3 Kans. App. 100, 45 Pac. 726; *Lackey* v. *Lackey* (1847), 8 B. Mon. (Ky.) 107; *In re Lindsley* (1890), 46 N. J. Eq. 358, 19 Atl. 726; *In re Vanauken* (1854), 10 N. J. Eq. 186; *In re Blewitt, supra; In re Demelt* (1882), 27 Hun (N. Y.) 480; *Huidekoper's Case* (1902), 28 Pa. Co. Ct. Rep. 394.

*Martin* v. *Motsinger, supra,* was a proceeding to have a guardian appointed for Mrs. Martin on account of unsoundness of mind. No notice was issued or served and she was not present in court at any time. The clerk filed an answer, and the cause being called for trial, certain attorneys appeared in her behalf and objected to proceeding in the cause because of want of notice. Without ruling on the objection, the court caused a jury to be empaneled and sworn and then re-

quired the petitioner to submit proof showing why Mrs. Martin was not produced in court. Witnesses were examined, and the court found she could not be produced in court by reason of physical infirmities and extreme old age, after which, the objection was overruled and the trial proceeded. On appeal, it was contended: (1) That the court had no jurisdiction over the subject-matter; (2) that the court had no jurisdiction of her person. In disposing of the first contention, the court, after calling attention to the fact that the circuit court had exclusive jurisdiction of cases of that character, said: "Jurisdiction of the subject-matter does not mean jurisdiction of the given case, but of the class of cases to which it belongs. * * * Jurisdictional questions thus raised must be determined from the face of the record." In disposing of the second objection, it was said: "In our opinion a party may not only waive notice in such cases by a personal appearance, but may appear by attorney. The appellant cannot insist that she was incompetent to employ counsel, because her standing on this appeal depends upon the assertion of her mental capacity and ability to transact business. It is not claimed in this appeal that their appearance for her was unauthorized. They not only continued to represent her in the circuit court, but represent her here. Even if their appearance for her in the circuit court had been unauthorized, it would be binding upon her until set aside." See *Berry* v. *Berry* (1897), 147 Ind. 176, where it is said, "notice is indispensable unless waived," *Galbreath* v. *Black* (1883), 89 Ind. 300, being, in effect, overruled.

*Shafer* v. *Shafer, supra,* was an action to have William H. Shafer adjudged of sound mind and to have the care of his property restored to him, a guardian having theretofore been appointed for him. On leave of court, he filed what he called a complaint in equity to vacate

the original judgment for alleged fraud. It appeared from his complaint that when he was an inmate of the hospital for the insane, his wife filed an application to have a guardian appointed; that he had no notice or knowledge of the proceedings until after the guardian had been appointed; that a summons in said proceedings had been issued and served on the superintendent of the hospital where he was confined pursuant to §333 Burns 1926, §318 Burns 1914, but that he had no knowledge of the same until after the judgment was rendered. He attacked the service on the ground that the proceeding was not a civil action, and, if it were a civil action, the provision for substituted service was void. The court, after holding that the proceeding was governed by the civil code, held that even though the substitute service provisions were void, the judgment was not void, because it did not affirmatively appear that the party had not been served with personal notice in addition to the substituted service. So here, there is nothing on the face of the record affirmatively showing that appellant was not also served with summons by the sheriff in addition to the attempted service by Mr. Ayres.

Appellant next contends that the appointment should have been vacated on the ground that the §3442, *supra,* contemplates the appointment of guardians only 14. for persons mentally incapable and not for persons of sound mind. In support of this contention, it is claimed that the court was without jurisdiction or authority to render a judgment appointing a guardian for her because she was an adult person of sound mind and disposing memory. The answer to this contention is that it is not necessary under §3442, *supra,* that the person for whom the guardian is asked shall be of unsound mind. Indeed, one of the purposes of this statute was to provide for the appointment of guardians for persons who are not, in fact, of unsound mind.

Sections 3442, 3443, *supra,* authorize the court having probate jurisdiction to appoint a guardian for a person who shall be found to be incapable of managing his estate or business affairs because of "old age, infirmity, improvidence, or being a spendthrift." Old age or infirmity alone is not sufficient to warrant such appointment. It must be such as renders the person "incapable of managing his estate or business affairs."

It has been suggested that incapacity to manage his estate and business affairs means, and must be held to mean, a mental incapacity and not a physical incapacity, and that a statute authorizing the appointment of a guardian for an adult who is not mentally incapacitated would be in violation of Art. 1, §1 of the Constitution, in that, it would deprive one of the inalienable rights of liberty and the pursuit of happiness by restraining him of his liberty and the right to the control of his property even though of sound mind and fully capable mentally of managing both his estate and business affairs through agents and servants of his own selection.

This statute was held constitutional by the Supreme Court in *Kutzner* v. *Meyers* (1915), 182 Ind. 669, Ann. Cas. 1917A 872, in so far as it related to an aged person who by reason of his age had become incapable of managing his estate and business affairs. A careful perusal of the opinion of the court in that case, however, leads us to infer that the incapacity the court had in mind was a mental rather than a physical incapacity. "It has been always" said the court, "the policy of the State to protect those who by reason of youth or incapacity were incapable of managing their estates by placing their property in the hands of guardians or conservators. There is no reason apparent to the court why the same protection should not be extended to persons in their second childhood as is given to infants

and persons of unsound mind or habitual drunkards."
And, on page 674, the court said: "Having in mind
the age of appellant and his mental condition incident
thereto as shown by the evidence   *   *   *." In sup-
port of the first quotation, the court cited *Devin, Gdn.,*
v. *Scott* (1870), 34 Ind. 67, where the court held the
statute authorizing the appointment of a guardian for
an habitual drunkard constitutional. In that case, the
court was dealing with a statute which, as it said, was
for the purpose of protecting persons who were in-
capable of protecting themselves and that the true in-
quiry was whether the person was incapable of making
contracts and managing his property.

The Kutzner Case was one where the court was deal-
ing with a party who was eighty-five years of age and
where the evidence was sufficient to sustain the finding
that he was, by reason of his age, mentally incapaci-
tated.

For a case holding a statute providing for the ap-
pointment of a guardian for a person mentally compe-
tent but physically incompetent, unconstitutional, see
*Schafer* v. *Haller* (1923), 108 Ohio St. 322, 140 N.
E. 517.

The Supreme Court of Massachusetts, in *Foss* v.
*Twenty-Five Associates* (1921), 239 Mass. 295, 131 N.
E. 798, under a statute providing for the appointment
of a conservator to manage the estate of a person by
reason of advanced age or mental weakness, held that
the appointment made on the application of the ward,
though of sound mind, was valid.

In the instant case, the court had jurisdiction of the
subject-matter—that is, of the appointment of a guard-
ian for a person who by reason of infirmity was
incapable of managing her estate and business
affairs, and by reason of her appearing and filing
an answer, it also had jurisdiction of her person. If

the evidence was not sufficient to have warranted the court in finding that appellant, by reason of her age or infirmity, was not mentally incapable of managing her estate and business affairs, the judgment may have been erroneous, but not void. The court may have made a mistake in applying the law to the facts so that the decision would have been contrary to law and subject to reversal on appeal—a question we are not required to determine and on which we express no opinion. We are, in effect, asked to reverse the judgment appointing the guardian in the first instance on the theory that the finding of the court was not sustained by sufficient evidence and was contrary to law, without any showing as to diligence on the part of appellant in seeking relief and on the denial of the court to set aside the judgment, on a petition filed after the time for appeal had expired and when the evidence is not in the record. This we cannot do. We do not mean to be understood that appellant is without remedy. We have no doubt but that if appellant should file her petition asking that her estate and business affairs be restored to her, that the court, on proof that she is capable of managing her estate and business affairs, will unhesitatingly make such an order.

In *Kimball* v. *Fisk, supra,* the proceedings relating to the appointment of the guardian and the order *nunc pro tunc* were somewhat like the proceedings in the instant case. There, notice was ordered but not given as required. The person for whom the guardian was appointed there, as here, asked that a certain party be appointed his guardian, and also claimed that he was of sound mind. It was there held that if he had capacity as he claimed, he, by such request, waived the defect in the notice.

No reversible error being shown, the judgment is affirmed.

### DISSENTING OPINION.

DAUSMAN, P. J.—This appeal involves matters of such unusual concern, not only to the unfortunate person directly affected, but also to the public, that I am warranted in stating at some length the reasons why I dissent.

The statute under which this proceeding was instituted is in some respects an extraordinary piece of legislation; and, because of its extraordinary character, it is essential that its scope and purpose be given some consideration.

For centuries, in civilized countries, it has been regarded as a duty of the state to care for two classes of incompetents, viz., infants and insane adults. From time immemorial, infants have been recognized as incompetents because of that immaturity of reason and judgment which in law is conclusively presumed to be the concomitant of childhood and to render them incapable of managing their estates. Having passed the period of infancy and attained maturity, every adult is regarded as competent to care for his person and property, unless rendered incompetent because of deranged, disordered or inadequate mentality. In this jurisdiction, adequate power to care for the persons and estates of infants has been vested in the courts from the beginning. The statute now in force which provides for the care of the persons and estates of adults who are of unsound mind was enacted in the year 1853. §3424 *et seq.* Burns 1926, §3100 *et seq.* Burns 1914. Infants and insane adults have been regarded for many years as the two main classes of incompetents. In the year 1867, the legislature added another class, viz., habitual drunkards; and provided for the appointment of guardians to take charge of their persons and estates. §3446 *et seq.* Burns 1926, §6175 *et seq.* Burns 1914. An habitual drunkard is an incompetent

because the excessive use of intoxicating liquor has resulted in a debilitated intellect and consequent loss or deterioration of reason, sense and judgment. Inebriates or dipsomaniacs are usually classed with lunatics. *Coombs, Gdn.,* v. *Janvier* (1865), 31 N. J. Law 240.

The incompetency of each of the three classes above mentioned rests on a psychological basis—mental deficiency. Now, did the legislature, by the act of 1911, intend to declare certain classes of persons to be incompetent without regard to their state of mind? The inquiry is directly involved in the case at bar. The act designates four classes of incompetents: (1) The aged; (2) the infirm; (3) the improvident; and (4) spendthrifts.

The significance of the words "old age" is always indefinite. What is the minimum length of years to be attained before one may be properly classed as a person of old age? Is it not true that a man may be rightfully regarded by his fellow men as a person of old age while his mental faculties are unimpaired? May an aged man who is blessed with good intelligence, firmness, sense and judgment, be compelled to surrender his body and property into the hands of a guardian? These questions bring home the truth that in a proceeding to adjudge a person an incompetent because of old age, his mental state is the controlling factor. Before he may be so adjudged, the proof must show that he has lapsed into the condition commonly known as dotage, and in medical science designated senile dementia. 32 C. J. 610.

"Infirm" means "not firm or sound; weak; feeble; weak of mind or will; irresolute; vacillating; debilitated; sickly; feeble; decrepit; imbecile." Webster's Dic. "Infirmity" is a word of broad significance. It may denote a defect either of the mind or of the body. Here the question arises: Did the legislature intend

that a person may be adjudged an incompetent because of a physical infirmity which does not affect his state of mind?

"Improvident" means "wanting foresight or fore-thought; not foreseeing or providing for the future." Webster's Dic. The improvident are many. There were ten bridesmaids; five of them were provident and five improvident. It would seem that this feature of the statute should be enforced with great caution lest one-half the adult population shall be called upon to take charge of the other half. But the fact to be emphasized is that improvidence is due to defective mentality.

In the absence of a statutory definition a "spend-thrift" is "one who spends money profusely or improvidently; a prodigal; one who lavishes or wastes his estate." Webster's Dic. Manifestly the tendency characteristic of a spendthrift is due to deficient mentality—to the lack of sense and judgment.

Thus it appears that an adult may not be adjudged an incompetent of any class specified in the act of 1911 (as amended) except on the basis of defective mentality; unless the word "infirmity" may be so construed as to include a physical infirmity not affecting the mind. To hold that physical infirmity alone, however severe, could constitute incapacity within the statute, would be preposterous, dangerous to every citizen, inimical to the welfare of the state, and unconstitutional. *Schafer* v. *Haller* (1923), 108 Ohio St. 322, 140 N. E. 517. The implication in the main opinion that the statute has been held constitutional as to this feature is misleading and without support. The word "infirmity" must be construed so as to limit it to mental infirmity—infirmity of the intellect or will. The words "old age and infirmity," as used in the complaint, must be construed to mean the mental infirmity of old age. It follows that

VOL. 84—28

the action of the court in adjudging Mrs. Harvey an incompetent solely on the ground of physical infirmity is without authority of law and is utterly void.

If the main opinion is to stand, as against the foregoing objection to its validity, then there is another feature which must not be permitted to go unchallenged. That feature is the procedure. With respect to the procedure applicable in this class of cases, the main opinion is not clear and, if permitted to stand, will inevitably mislead the trial courts and members of the bar and will jeopardize the rights and security of citizens. That the procedure prescribed by the statute is intended for a special purpose, fully appears when we come to consider the nature of proceeding.

It should be observed as a preliminary to this discussion that the three statutes above mentioned are identical in character and purpose. They rest on the same fundamental principles and the decisions relating to the act of 1853 are applicable to the act of 1911 (as amended), except in so far as the legislature may have made slight differences in the procedure.

In the very nature of things, the proceeding cannot be a civil action within the Code. *Galbreath* v. *Black* (1883), 89 Ind. 300; *Studabaker* v. *Markley* (1893), 7 Ind. App. 368; *Martin* v. *Motsinger* (1892), 130 Ind. 555, Ann. Cas. 1913C 327. The legislature recognized the fact that the proceeding is not a civil action within the Code by providing that the "issue shall be tried as issues in civil actions." The person who files the "complaint" has no cause of action. He is not seeking to enforce any right or to redress any wrong. He can have no vested interest in his neighbor's unfortunate mental condition. In the legal sense, manifestly his interest in the matter can be no different than that of any other member of the community; unless possibly where the information is filed by one who is dependent

upon the incompetent for support. He has not a right to dismiss the proceeding, at least not without the consent of the court. He has not that right for the following reasons: (1) It is not his private affair; (2) the public has an interest in the matter, especially the governmental unit upon whose taxpayers the unfortunate person may become a charge; and (3) those, if any, who are dependent on the incompetent for their support, are entitled to consideration. *Studabaker* v. *Markley, supra; Hughes* v. *Jones* (1889), 116 N. Y. 67, 22 N. E. 446, 15 Am. St. 386, 5 L. R. A. 632; *Hamilton* v. *Traber* (1893), 78 Md. 26, 27 Atl. 229, 44 Am. St. 258.

It has been said that the proceeding is adversary. *Jessup* v. *Jessup* (1893), 7 Ind. App. 573. By that statement, the court meant to emphasize the fact that the proceeding is not *ex parte*. The proceeding may result in the deprivation of an adult citizen's dearest rights—his natural and constitutional rights—and, therefore, it is essentially adversary in the sense that every step necessary to due process of law must be strictly observed. Nevertheless, in the very nature of things it cannot be *adversary* in the sense in which that word is used in ordinary civil actions. It is not adversary in the sense that it implies hostility. It is not adversary in the sense that it implies a conflict of personal interests. No man of honor would suffer himself to become the adversary of one who is aged and infirm, in a proceeding of this kind, for any purpose of personal profit or advantage. No man with a spark of chivalry in his soul would brand his adversary "incompetent" and then proceed to vanquish him.

The truth is that the proceeding is an inquest. The so-called "complaint" is the information which invokes the action of the court. The purpose of the inquest is to protect the incompetent by conserving his estate and

providing proper care for his person. Upon the filing of the information, the proceeding becomes one by the state in its character of *parens patria*. It is a proceeding in which the state undertakes to exercise its parental care for its unfortunate citizens by promoting their welfare. *Studabaker* v. *Markley, supra; Hayward* v. *Hayward, Admr.* (1917), 65 Ind. App. 440; *Kutzner* v. *Meyers* (1915), 182 Ind. 669, Ann. Cas. 1917A 872; *Prokosch* v. *Brust* (1915), 128 Minn. 324, 151 N. W. 130; *In re Welch* (1900), 108 Wis. 387, 84 N. W. 550; 14 R. C. L. 555; 32 C. J. 627.

Notwithstanding its beneficent purpose, the proceeding is uniformly regarded as one fraught with the most serious consequences. If the subject of the inquest is found to be an incompetent, the proceeding results in depriving him, "not only of his personal liberty and the control of his property, but also of his place in the community as a rational being." *Asbury* v. *Frisz* (1897), 148 Ind. 513; *Jessup* v. *Jessup, supra*. That proceedings of this character present an unusual opportunity for fraud and oppression is quite obvious. There can be no doubt that if the courts should relax their vigilance and firmness, human vultures with insatiate greed, and impatient prospective heirs at law with itching palms, would seize upon the opportunity thus afforded to oppress the aged and to despoil them of their property. *Studabaker* v. *Markley, supra*. The procedure required by the statute is for the special purpose of preventing fraud and imposition. *Fiscus* v. *Turner* (1890), 125 Ind. 46; *Martin* v. *Motsinger, supra; Asbury* v. *Frisz, supra*. Meager though they are, those provisions are for the protection of the citizen, and, for that reason, they must be strictly followed; otherwise, upon proper application, the judgment will be set aside. *Martin* v. *Motsinger, supra; Asbury* v. *Frisz, supra; Soules* v. *Robinson* (1902), 158 Ind. 97,

62 N. E. 999, 92 Am. St. 301; 14 R. C. L. 556, §8; 22 Cyc 1122 *et seq.*; 36 Cyc 800 *et seq.*; 19 C. J. 804.

In the case at bar, the record discloses that ten months and eleven days after the filing of the "complaint," Lena Leota Harvey (herein designated Mrs. Harvey) filed her verified application to set aside the "judgment" and the appointment of the guardian. Her application was filed under the same title and number as that of the original proceeding. In the briefs, her application is called a "motion"; but, regardless of the label put upon it by counsel, it is a perfectly good application or complaint to be relieved from the action of the court in appointing the guardian, and to be permitted to have a hearing on the original complaint.

In her application, she uses the word "judgment," but apparently by that she means the appointment of the guardian; for, at that time, there was no judgment. Furthermore, at that time, there was no record showing service, appearance, issues, trial or verdict. As to all these features, the record was silent as the grave. How did the guardian meet the situation? By filing a verified motion seeking to have the court make a record *nunc pro tunc.*

It appears from the record that the summons was signed by the clerk of the court on January 17, 1921; that the day fixed therein for her appearance in court was January 27, 1921; and that no return thereof has ever been made by the sheriff showing service by him. The affidavit of Guy R. Ayres, indorsed on the summons and showing a pretended service by him on January 17, 1921, effectively and completely excludes the idea of a return by the sheriff. In this connection, a significant fact must not be overlooked. The oath which constitutes the verification to the pretended return was administered to Ayres by Joseph A. Dickey. The rec-

ord discloses that both Ayres and Dickey were at the time acting as attorneys for the plaintiff Rodger.

A summons is fully issued when it has been signed by the clerk, the seal of the court thereunto affixed, and delivered to the sheriff. A summons in the hands of a private citizen is ineffective. §332 Burns 1926, §317 Burns 1914; *Temple* v. *Irvin* (1870), 34 Ind. 412; *Fordice* v. *Hardesty* (1871), 36 Ind. 23; *Charlestown School Tp.* v. *Hay* (1881), 74 Ind. 127; *Alexandria Gas Co.* v. *Irish* (1899), 152 Ind. 535; *Marshall* v. *Matson* (1908), 171 Ind. 238. No one except a sheriff (in person or by deputy) or some other officer duly authorized by law, can serve a summons. That proposition is elementary. Watson, Revision Works' Prac. §886.

The statement of Mrs. Harvey, indorsed on the summons, to the effect that she accepts service, is of no force whatever. She could not accept service at the hands of one not authorized by law to serve a summons. To permit that would be to break down the rule that service can be made only by one duly authorized by law —a rule which is essential to the protection of every citizen. Especially should it be ignored in the case of one who stands charged as an incompetent by reason of old age and infirmity. It follows that there was no service.

The general rule is that where the record is silent as to the service of summons, it will be presumed, on collateral attack, that notice was duly given. But we are now dealing with a direct attack and with a record which is not silent. *Soules* v. *Robinson, supra.*

The complaint was filed in term; the appearance day specified in the summons was a day within the same term; but there is no indorsement on the "complaint" fixing the appearance day. Therefore, in no event could the service have been effective until the next subsequent term of court. Watson, Revision Works' Prac. §882.

The record wholly fails to show that any answer has ever been filed to the complaint of John C. Rodger, otherwise than by the recital in the *nunc pro tunc* record. There is no pretense on the part of the appellee that Mrs. Harvey personally filed an answer. It is conceded that she was not in court at the original trial (if there ever was such a trial), nor at any time prior thereto; and the appellee does not even intimate that she was represented by counsel. It is true that Rodger sets out in his motion for a *nunc pro tunc* record what purports to be a copy of an answer, verified by her before Guy R. Ayres, notary public. Since Mrs. Harvey did not file the pretended answer, either in person or by counsel, who could have filed it? If Dickey and Ayres, or either of them, had such a document, certainly neither of them could have filed it; for they were the attorneys for the plaintiff. If they procured such a document, exhibited it to the court, or in any way used it against Mrs. Harvey when she was not present in person or by counsel, their conduct in that regard was reprehensible.

In order that there may be no misunderstanding the pretended answer is here set out in full, except the title:

"Comes now the defendant, Lena Leota Harvey, and respectfully shows to the court:

"That she waives examination by the court in the above entitled cause; that on account of physical disability she is physically unable to appear in person at said court; that she is of sound mind and disposing memory, but that on account of her present physical infirmities an emergency exists for the immediate appointment of a guardian of her person and estate; and that it is her desire that a guardian of her person and estate be appointed forthwith by this court.

"Wherefore, the said defendant, Lena Leota Harvey, prays this court to appoint forthwith the plaintiff here-

in, John C. Rodger, guardian of her person and estate, for the reasons above set out.

"(Signed)  Lena L. Harvey.

"Subscribed and sworn to before me this 20th day of January, 1920.

"(Signed)  Guy R. Ayres,

"Notary Public.  (SEAL.)

"My commission expires August 25, 1923."

Aside from the fact that it shows on its face that it was procured by one of plaintiff's attorneys, the document is wholly without merit.  Had it been procured legitimately and filed in the usual and proper way, it would have been unavailing for any purpose.  It does not deny the averments of the "complaint."  By presenting it, no issue was raised, except perhaps indirectly as to her mental condition.  It is a mere statement of the conclusions (or ultimate facts) which can be established only by proof at the trial.  If it can be said that the document is a confession by Mrs. Harvey that she is an incompetent solely by reason of physical infirmity, then it is worthless; for such a confession is not authorized by the law.  Of course, such a document, coming from one who stands charged as an incompetent by reason of old age and infirmity, cannot be accepted by any court for any purpose.  If that sort of procedure were tolerated, it would create the opportunity for unlimited fraud and would put helpless men and women at the mercy of the cunning and unscrupulous who would not be slow to find their victims.  The statute imperatively requires a full issue; and in the circumstances of this case, it was the duty of the court to direct the clerk to file an answer, to require the prosecuting attorney to represent Mrs. Harvey, and to put the issue to a trial.

In proceedings of this character, a special duty rests upon the court.  Apparently the following statement

made by this court needs to be repeated: "No responsibility of greater gravity, no higher or more important duty rests upon any public officer than that which the law imposes upon the trial judge in guarding and protecting the interests of those charged with being of, unsound mind. * * * Such proceedings should be scrutinized with the greatest of care by the presiding judge; for, by them, great wrongs are liable to be perpetrated under the forms of law. * * * If the proceedings be unfounded, they are liable to work an irreparable injury to the person charged. * * * After the proceeding is instituted, his (the plaintiff's) duty is done, and that of the court begins." *Studabaker* v. *Markley, supra.*

In Wetmore's Case, the Supreme Court of Washington said: "It is inconsistent, certainly, to charge him with being incapable of managing his own affairs and at the same time hold him responsible for a failure to appear to protect his own rights in the premises." *In re Wetmore's Guardianship* (1893), 6 Wash. 271, 33 Pac. 615. In that case, Wetmore was alleged to be incompetent because of habitual drunkenness. Likewise, in the case at bar, it is inconsistent to treat the document signed by Mrs. Harvey as a confession of the truth of the averments of the complaint, or to rely on her statements therein made for any purpose, and, at the same time, adjudge her to be incapable of managing her affairs. If documents so procured and presented are to be accepted by the courts, a golden opportunity will be thus furnished for the harpies who masquerade in the guise of lawyers and use the livery of a noble profession for the perpetration of fraud.

It appears from the motion for a *nunc pro tunc* record, which motion is verified by the oath of Joseph A. Dickey, that the judge of the trial court indorsed on the pretended answer: "Jany. 21, 1921. Ex. & approved,

Guardian appointed and letters ordered as prayed for. William A. Kittinger, Judge." The inference is that the court treated that document as an application for the appointment of a guardian, on the same basis as in the case of infants, and that the guardian was appointed pursuant to that memorandum. The record wholly fails to show any issue presented for trial. The only legitimate construction to be put upon the record is that there was a sort of *ex parte* hearing only; for, in view of the facts disclosed by the record, a trial in the ordinary sense of that term was an utter impossibility. In other words, the recitals in the record are self-contradictory and self-destructive. Furthermore, the hearing was on January 21, 1921, which was the fourth day after the date of the summons and in direct violation of the requirement of the statute. It should be noted also that in the statement signed by Mrs. Harvey on the back of the summons, she says that she will not be "able to attend the trial of this cause on the 27th day of January." There is nothing whatever to show that she could not have been there within a reasonable time thereafter.

The flagrant irregularities in the proceeding were not cured by the *nunc pro tunc* record and could not be cured by any *nunc pro tunc* record. In fact, the *nunc pro tunc* record serves only to emphasize the irregularities. It follows that Mrs. Harvey is entitled to have the letters of guardianship canceled, the appointment of the guardian and the entire *nunc pro tunc* record set aside, solely on her verified application. The record itself makes a complete case in her favor and shows conclusively that she was entitled to the relief for which she asked. Therefore, a trial on her application for relief could not possibly have changed the situation.

I need not dwell longer upon the irregularities in the proceeding. This pitiful record speaks for itself. It

Harvey *v.* Rodger—84 Ind. App. 409.

convinces me that Mrs. Harvey has been entrapped and victimized by men who are incompetent—to say the least.   It is the duty of this court to release her.

It is true that §3 of the act which controls this proceeding provides that anyone who has been adjudged an incompetent may apply to the court to have the guardian removed and his property returned to him, on the ground that his former disability no longer exists and that he is now capable of managing his estate.   Then, if he shall prove the averments of his application by satisfactory evidence, the court shall grant the relief.   But that provision cannot be applicable to the case presented by this record.   Since Mrs. Harvey has not been rightfully adjudged an incompetent, why should she assume that burden?   If she should attempt to escape from her bondage by that course, she would find herself in a situation of humility and despair.   How can she prove that she has recovered from old age and infirmity?   Can she turn back the hands of time?   The years that are gone are gone forever.   If, in truth, she is not aged and infirm, then to attempt to escape by that route, she would be compelled to violate her conscience by admitting as truth that at the time the proceeding was commenced, she was a person of old age and infirmity, and then follow that admission by averring as truth the self-evident falsehood that, since the adjudication, she has grown younger.   Furthermore, if I may judge the future by the past, then and in that event, she will find herself confronted by an array of counsel employed by her guardian and at her expense for the purpose of keeping her in bondage.

There is a suggestion in the main opinion that Mrs. Harvey may have accepted pecuniary benefits indirectly resulting from this proceeding; that third parties may have acquired property rights through the guardian; and that she may have stood by and "watched the

guardian manage her business," etc. If she was lawfully adjudged an incompetent, her status was thereby fixed as that of one *non sui juris*. By virtue of the statute, her *body* and her *property* were surrendered into the custody of her guardian. By that judgment, she lost her very existence as a person capable of determining and asserting her rights. How could she "accept" anything? Is it possible that the rule of estoppel is applicable to such a helpless creature? Is it possible that she may be chargeable with laches?

The primary purpose of the judgment is to fix her personal status. Such a judgment is not property. No one acquires any property right in it. No one can have any vested interest in it. Therefore, it may be freely set aside without affecting the rights of others. It is not unusual for courts to cancel letters of guardianship or administration improvidently issued. In all cases of that kind, including the case at bar, the law makes ample provision and the courts have adequate power to protect all persons who have had honest dealings with the guardian or administrator. However, if perchance a strange case should arise wherein someone must suffer loss, then the words of Judge Mitchell would be applicable: "The protection of persons who are so unfortunate as to be bereft of reason and incapable of managing their own estates, is a higher obligation, and an object more to be cherished by the courts, than is the protection of holders of commercial paper, however innocent they may be." *Dickerson, Admr.*, v. *Davis* (1887), 111 Ind. 433. The principle on which that righteous statement rests is fully applicable to the case at bar, even if the trial court was of the opinion that mental incapacity was not involved.

Another question of vital importance arises spontaneously on the record. What standing has Rodger as a litigant in this court in opposition to Mrs. Har-

vey? He claims to be her guardian. As her guardian, his sacred duty is to protect his ward and his ward's estate. If, in truth, she is not an incompetent, he should be the first to make that fact known to the court. He should not be permitted to assume an attitude of hostility and array himself against her. He cannot rightfully expend her property to carry on this litigation. *Studabaker* v. *Markley, supra.*

It is stated in the main opinion that the Supreme Court of this state has held, in *Berry* v. *Berry* (1897), 147 Ind. 176, and *Shafer* v. *Shafer* (1914), 181 Ind. 244, that a proceeding to have a person adjudged an incompetent is a civil action within the Code. If I am able to comprehend those cases, they do not so hold. It is a familiar rule that where the legislature creates a special proceeding but does not prescribe a full and complete procedure therefor, then, with respect to the issuance and service of summons, reserving exceptions, filing bills of exceptions, and other features not specified in the special statute, the general code practice will supply the deficiency. The two cases last mentioned give recognition to that rule and nothing more—so far as this feature is concerned. It would be just as reasonable to say that a proceeding to establish a ditch, to vacate a street, or to relocate a county seat, is an action within the Civil Code.

I am convinced that the judgment is wholly unauthorized by law and void, and that it is the duty of the trial court to clear its record of the void matter. If I am wrong in this, then because of the gross irregularities, the judgment should be set aside and Mrs. Harvey should be permitted to have her day in court to defend against the complaint. When she has gained her liberty by either method, it will then be the duty of the guardian to render an accounting.