STATE EX REL. LACY *v.* PROBATE COURT, MARION COUNTY ET AL.

[No. 30,197. Filed May 18, 1962.]

*Charles W. Cook, Cook, Bose, Buchanan & Evans,* of Indianapolis, and *Richard G. Speelmon,* of Nashville, for relator.

*Joseph G. Wood, pro se.*

*William H. Krieg, Richard D. Wagner, Lester Irons, Jerry P. Belknap, Kreig, Devault, Alexander & Capehart,* of counsel, and *Barnes, Hickam, Pantzer & Boyd,* of counsel, all of Indianapolis, for respondents.

JACKSON, J.—Relator has brought this original action by the filing of his verified petition for a writ of mandate and a writ of prohibition directed to the respondents. This Court issued a temporary writ, and respondents were ordered to show cause why such writ should not be made permanent. Respondents duly filed their return.

It appears from the record in the instant case that the brother of the relator was appointed guardian of

the person and property of relator by the respondent court on November 1, 1957, after a finding that relator was incompetent and unable to manage his own estate and business affairs. Subsequently, relator's brother died and successor guardians were appointed by the respondent court.

At the time of the appointment of the guardian in 1957, relator herein was a voluntary patient at the Milwaukee Sanitarium, Wauwatosa, Wisconsin. He continued as a patient at such institution until he was ordered transferred by the respondent court on November 9, 1961, to the Methodist Hospital, Indianapolis, Indiana.

On December 15, 1961, the guardian of the person of the relator filed with the respondent court a "Petition for Instructions Concerning Further Hospitalization of Ward," praying for an order authorizing said guardian to remove relator from the Methodist Hospital to an institution known as Anclote Manor, Tarpon Springs, Florida. The guardian alleged that it would be to the best interests of the relator herein to premit his removal to Florida for further observation and treatment.

On January 12, 1962, relator entered what he termed was a special appearance and filed his answer to the guardian's petition for instructions relative to relator's further hospitalization, alleging that the respondent court had no jurisdiction over the person of relator and praying that the petition of the guardian be denied. The respondent court overruled relator's objection as to its jurisdiction, proceeded with a hearing on the petition, and thereafter entered its order on the same day approving the removal of the relator from the Methodist Hospital, Indianapolis,

Indiana, to Anclote Manor, Tarpon Springs, Florida, for further treatment until further order of the court.

A "Petition to Stay 'Order Approving Moving of Ward' was filed by relator on January 15, 1962, alleging, *inter alia*, that there has been pending in the present guardianship proceeding a complaint filed by relator to vacate and set aside the judgment of the respondent court declaring relator an incompetent and appointing a guardian of his person and of his estate. Also, said petition alleged that if he is moved to Florida he will not be able to freely consult with his attorneys in preparation for his case. Further it was alleged that relator does not want to go to Florida, and that if he is forced to go this will most likely be detrimental to his health.

The petition to stay the order requiring the moving of relator to Florida was overruled by the respondent court, and as a result thereof, this original action was brought. Relator seeks to restrain the respondents from enforcing the order approving his removal to Florida dated January 12, 1962, and to have respondents mandated to expunge from the records said order, or to grant relator's petition to stay said order.

In regard to the jurisdiction of the person of the relator, the record in connection with the service of process in the initial proceedings instituted in 1957 indicates the following situation. A summons was issued and delivered to the Sheriff of Marion County, Indiana, on October 16, 1957, and was thereafter served by a Marion County Sheriff's deputy on October 17, 1957, by leaving a copy thereof at an address indicated to be the last and usual place of residence of the relator herein. In addition, a notice of hearing on the petition for appointment of a

guardian was served on October 17, 1957, and the Sheriff's return also indicated that the same was served at the last and usual place of residence of relator. Another summons (not in the form of an alias summons) was read, according to the affidavit appearing on the back thereof, by the brother of the relator to him at the institution in Wauwatosa, Wisconsin, where he was a patient at the time that the guardianship proceedings were commenced. A copy of this additional summons was delivered to one of the physicians at said institution on October 23, 1957, immediately subsequent to the reading thereof to the relator. It appears, also, that a notice of hearing of the guardianship petition was read to relator in Wisconsin at this time.

A study of the record presently before this Court does not expressly indicate whether or not the relator was in fact at the hearing on the guardianship petition which was held on November 1, 1957. However, the record does show that the prosecuting attorney of Marion County by his deputy appeared for the purpose of protecting the interests of the relator. In particular, no finding is indicated in the record that relator was absent from the hearing and that he should not be required to attend because of danger to his health.[1]

---

1. A section of the probate code relating to guardianship proceedings provides:

"Upon the filing of the petition . . . in the case of any person alleged to be incompetent for any reason other than his minority, and after notice . . . such court shall cause said person to be produced in court . . . If the court shall be satisfied that such person alleged to be incompetent cannot, without injury to his health, be produced in court, such personal appearance may be dispensed with." [Acts 1953, ch. 112, §1919, p. 295, being §8-119, Burns' 1953 Replacement.]

In its judgment dated November 1, 1957, appointing relator's brother as his guardian, the respondent court found that summons and notice of hearing on the guardianship petition had been duly and timely served upon relator who was found to be a legal resident of Marion County, Indiana. Thereupon, the respondent court concluded that it had jurisdiction to proceed in the matter.

Respondents contend that this original action brought by relator constitutes a collateral attack on the judgment of the respondent court dated November 1, 1957, finding relator incompetent and appointing a guardian for him.

A distinction between an action considered as a direct attack on the validity of a judgment, and one considered as a collateral attack on its validity, has been described as follows:

> "An important, very often controlling consideration bearing on the direct or collateral character of the proceedings relates to the legal authorization for the course taken. The law of every jurisdiction prescribes the manner in which litigants must proceed to correct, vacate, review or annul judicial decisions. It specifies the remedies to be invoked and the extent to which they are available. This being true, it is but reasonable to conclude that an assailant is pursuing a very direct attack when he strikes at the judgment with one of the procedural weapons thus placed at his disposal, and per contra that his assault is essentially collateral when attempted without such legal means. . . ." Freeman on Judgments, 5th Ed., Vol. 1, §306, p. 606; *Spencer* v. *Spencer* (1903), 31 Ind. App. 321, 67 N. E. 1018.

Another aspect of a collateral attack is that the direct purpose of the proceedings is to obtain some

immediate relief other than the vacation of ■ the judgment, although relief from the judgment may also be necessary under the circumstances.[2]

Still another feature which has been attributed to a collateral attack is its attempt to step outside of the record of the former judgment in an attempt to impinge its validity.[3]

Relator states that this original action for a writ of mandate and a writ of prohibition cannot be considered a collateral attack because it is made in the very same guardianship proceeding wherein the initial appointment of the guardian was made.

We believe that the features of a collateral attack are present in the case at bar. Relator has brought this original action to vacate and set aside the order of the respondent court of January 12, 1962, allowing the guardian of relator's person to move him to Florida. The basis of this action is the alleged invalidity of the 1957 judgment of the respondent court appointing a guardian of relator's person and estate.

For persons aggrieved by a decision of the probate court, there is provided in the probate code, various

---

2. Freeman on Judgments, 5th Ed., Vol. 1, §306, p. 607, See also: 30A Am. Jur., Judgments, §852, pp. 769, 770.

3. *Clark* v. *Clark* (1930), 202 Ind. 104, 172 N. E. 124. However, although not appearing on the face of the record, where a judgment is attacked specifically for fraud in its procurement, it has been considered as a direct attack. *Cotterell, Administrator* v. *Koon et al.* (1898), 151 Ind. 182, 51 N. E. 235. But such is not the case here.

See also *Asbury* v. *Frisz* (1897), 148 Ind. 513, 47 N. E. 328, where fraud in making false representations to the Court as to the inability of an alleged insane person to be present at a hearing for the appointment of a guardian was cause for setting such judgment aside.

remedies to correct alleged errors, such as appeal[4] or application for vacation or modification of orders and judgments.[5] These remedies are available to guardianship proceedings.[6]

Relator in this original action in this court is attempting to use an extraordinary remedy to accomplish a result outside of the regular procedure.

Also, it appears that relator seeks to go outside of the record regarding his contentions as to the lack of proper service of process in connection with the 1957 judgment, since the record before this Court indicates that process was duly served, notice given, and personal jurisdiction was obtained. Relator's further contention that he was not present at the hearing in 1957 on the petition for appointment of a guardian for him cannot be determined by this Court on the basis of the record because it is actually silent as to relator's presence or lack of presence at such hearing.

In summary, the immediate relief that relator seeks in this Court is directed to the order allowing relator's removal to Florida, although a necessary corollary to granting such relief would be the setting aside and vacating the judgment of the respondent court dated November 1, 1957, finding relator incompetent and appointing a guardian for him. Thus, under the circumstances, relator's original action herein must be considered as a collateral attack upon the judgment of November 1, 1957.

No question has been raised in this original action as to the jurisdiction of the respondent Probate Court

4. Acts 1953, ch. 112, §122, p. 295, being §6-122, Burns' 1953 Replacement.

5. Acts 1953, ch. 112, §121, p. 295, being §6-121, Burns' 1953 Replacement.

6. Acts 1953, ch. 112, §1903, p. 295, being §8-103, Burns' 1953 Replacement.

of Marion County, Indiana, over the subject matter of guardianship proceedings.[7]

As to the respondent court's jurisdiction of the person of the relator, the respondents contend that, since this is a collateral attack on the 1957 judgment, there is a legal presumption that the court had such jurisdiction before it proceeded to render judgment when the record on its face does not show otherwise.

On the other hand, it is relator's position that no jurisdiction of the person was in fact obtained because the face of the record shows that process was left at his "last and usual place of residence" in Marion County, Indiana, while the petition for appointment of a guardian for relator shows that he was living in Wisconsin at the time of the filing of the petition. Secondly, relator alleges that no jurisdiction of the person was obtained by the service of process on him in Wisconsin because there is no required showing in the record of a statutory cause for the service of a summons upon him out-of-state, nor a showing of service by a competent person. For a third reason why jurisdiction of the person was not obtained over him, relator contends that personal service on non-residents is equivalent to publication, and therefore, he was entitled to thirty (30) days notice before the

---

7. The statute provides that the Probate Court of Marion County shall have original, exclusive jurisdiction in all matters pertaining to the appointment of guardians. Acts 1917, ch. 141, §1, p. 520, being §4-2910, Burns' 1946 Replacement. It is further provided that said court shall be a court of record and of general jurisdiction and its judgments shall have the same force and effect as those of the circuit court. Acts 1907, ch. 151, §16, p. 240, being §4-2916, Burns' 1946 Replacement. See *State ex rel. Bradshaw* v. *Probate Court of Marion County et al.* (1947), 225 Ind. 268, 272, 73 N. E. 2d 769.

The probate code provides that: "The jurisdiction of the court having probate jurisdiction over all matters of guardianship, other than guardianships ad litem, shall be exclusive, subject to the right of appeal . . . " Acts 1953, ch. 112, §1904, p. 295, being §8-104, Burns' 1953 Replacement.

hearing for appointment of a guardian.[8] But, the record affirmatively shows, according to relator, that he was only given from October 23, 1957, the date of the service of summons on him in Wisconsin, to October 30, 1957, the return date, to answer the guardianship petition.

As a fourth reason why no jurisdiction of the person was obtained here, relator urges even if he was a resident of Indiana, he was given less than ten (10) days from the service of process to the return date.[9]

A fifth reason urged by relator in his contention that the court has no jurisdiction to enter its order and judgment of November 1, 1957, is that relator did not appear in person or by attorney at the hearing on the guardianship petition, that relator was not produced in court, nor was the court informed by evidence or affidavit that relator could not, without injury to his health, be produced in open court, so that his personal appearance might lawfully be dispensed with.[10]

The general rule in a collateral attack on a domestic judgment of a court of general jurisdiction is that

---

8. Relator refers to Acts 1947, ch. 94, §1, p. 278, being §2-801, Burns' 1961 Cum. Supp., which provides in part:

"When a complaint is filed either in vacation or during any term of court, the plaintiff may fix the day by endorsement thereof upon the complaint, at the time of filing the same, on which the defendant shall appear, which day, when so fixed shall be stated in the summons when issued. The action shall be docketed in its order and if the summons shall be personally served ten [10] days before such day, or publication shall be made once each week for three [3] weeks successively, thirty [30] days before such day, such action shall thereupon stand for issue and trial at such day, if such day be in regular term of the court, and if not in such term, then on the first day of the next regular term of the court; . . . "

9. Acts 1947, ch. 94, §1, p. 278, being §2-801, Burns' 1961 Cum. Supp., *supra*, note 8.

10. Acts 1953, ch. 112, §1919, p. 295, being §8-119, Burns' 1953 Replacement.

jurisdiction of the person will be presumed to have been acquired when the record is silent or shows nothing to the contrary. *Bateman* v. *Miller* (1889), 118 Ind. 345, 21 N. E. 292; *The Evansville, etc. Co. et al.* v. *Winsor, by Next Friend* (1897), 148 Ind. 682, 48 N. E. 592; *Sinclair* v. *Gunzenhauser* (1913), 179 Ind. 78, 98 N. E. 37, 100 N. E. 376; *Friebe* v. *Elder* (1914), 181 Ind. 597, 105 N. E. 151.

In the case at bar, the record shows affirmative jurisdictional findings. The question presented by relator's argument is whether the record shows on its face that the 1957 judgment is void.

In answer to that question, we do not think that the record does show on its face that the 1957 judgment of the respondent court is void. The resolution of the contentions made by relator as to the lack of jurisdiction of the person cannot be done from the record before us. If we are to accept relator's contentions that he was not a resident of Indiana for purposes of service of process at the time of the filing of the guardianship petition in 1957, then we must do so on the basis of the papers that relator has filed in this Court in this original action and not on the record made in the respondent court. It is true, as relator states, that the petition for appointment of a guardian does allege that relator was a patient in the Milwaukee Sanitorium at Wauwatosa, Wisconsin, at the time of the filing of the petition. However, this allegation alone, without further facts, cannot be said to determine that relator had established a new residence in Wisconsin as opposed to the possibility that relator was temporarily absent from his established residence in Marion County, Indiana.[11]

11. It should be noted that the respondent court specifically found in its judgment appointing a guardian for relator that he was a resident of Marion County, Indiana.

As to the matter of service of notice, the provision of the probate code here applicable provides that a copy of such notice shall be delivered personally or left at the last and usual place of residence of the person to whom the notice is directed at least ten (10) days before the hearing, if such person is a resident of the State of Indiana.[12] However, "the court for good cause shown may reduce the number of days of notice but in every case at least three (3) days notice shall be given."[13]

To summarize, the petitioner, in the 1957 proceedings for the appointment of a guardian for relator, sought to comply with both the provisions of the probate code concerning notice[14] and the provisions of the civil code regarding the issuance of summons.[15] From the face of the record before us in this original action, we must assume that the jurisdictional findings of the respondent court are valid, and that relator was an Indiana resident for purposes of obtaining jurisdiction of the person at the time of the com-

---

12. Acts 1961, ch. 50, §2, p. 98, being §6-112, Burns' 1961 Cum. Supp. The 1961 amendment of this section is not applicable to this case. This section in the original act provided that such notice shall be delivered personally or by leaving a copy of the notice at such person's "dwelling house or usual place of abode with some person of suitable age and discretion residing therein. . . . " Acts 1953, ch. 122, §112, p. 295. The 1955 amendment to this section substituted the words, "last and usual place of residence," for the words "dwelling house or usual place of abode with some person of suitable age and discretion residing therein." Acts 1955, ch. 258, §1, p. 667. Section 14 of Acts 1955, ch. 258, which chapter amended various sections of the probate code, provided at p. 678 in pertinent part:

"The procedure herein prescribed shall govern all proceedings in probate brought after the effective date of this act; . . ."

The effective date of Acts 1955, ch. 258, was July 1, 1955. This was in effect at the time of the initial proceedings herein.

13. Acts 1955, ch. 258, §10, p. 667, being §8-114, Burns' 1961 Cum. Supp.

14. §§6-112 and 8-114, Burns' 1961 Cum. Supp. Also, Acts 1953, ch. 112, §1919, p. 295, being §8-119, Burns' 1953 Replacement.

15. Acts 1947, ch. 94, §1, p. 278, being §2-801, Burns' 1961 Cum. Supp.

mencement of the guardianship proceedings. Therefore, it is our conclusion that both of these provisions of the statute were complied with in this case.[16]

The relator further contends that he should have been produced at the initial guardianship hearing in 1957, or that it should have been shown in the record that he could not be produced in court without injury to his health.[17] Therefore, since there is no finding in the record why he was not produced in court, relator concludes that the judgment shows on its face that the respondent court lacked jurisdiction to appoint a guardian for him. Relator urges that the presumption of lawfulness of court proceedings is not applicable when the constitutional rights of a party adversely affected by such court proceedings are challenged. A court can imply the existence of necessary jurisdictional facts only where there are no statutory jurisdictional requirements. Relator cites the following cases: *State ex rel. Schrenker* v. *Superior Court etc.* (1961), 242 Ind. 171, 177 N. E. 2d 594; *State ex rel. Red Dragon Diner* v. *Superior Court* (1959), 239 Ind. 384, 158 N. E. 2d 164; *State ex rel. Ayer* v. *Ewing* (1952), 231 Ind. 1, 106 N. E. 2d 441.

The reliance which relator places upon the above cited cases is misplaced as concerns the present case. The distinction between the cited cases and the one under consideration lies in the difference between types of jurisdiction. The relator in the instant case is

16. Upon the facts here, and our conclusion based on them, we need not delve into a consideration of relator's contention regarding the applicability of the civil code providing for the issuance of summons for the commencement of a "civil action" and its relationship to proceedings for the appointment of a guardian under the provisions of the probate code.

17. Relator refers to Acts 1953, ch. 112, §1919, p. 295, being §8-119, Burns' 1953 Replacement.

attacking the basis of the jurisdiction of his person by the respondent court, contending that his personal presence was necessary (or a finding that such could be dispensed with) in order to bind him with a personal judgment appointing a guardian for him. In the cited cases it is questioned whether the court in the special statutory proceedings involved has jurisdiction of the particular case as defined by the statute. Certain jurisdictional averments or adjudications were specifically required by the statutes applicable in the cited cases to invoke the court's power over the type of case in controversy.

Since the respondent court had jurisdiction of the subject matter and the proceedings herein, and it appearing from the face of the record that the court had jurisdiction of the person, therefore, it was within the power of the court to order the change of residence of the relator herein to Florida for further treatment.[18]

The respondent court here concluded that on the basis of the evidence submitted it would be to the best interests of the relator to be treated at the Florida sanitarium until further order of the court. This was within the discretion of the court to so order under the statute. Such a decision may be erroneous, however, as stated in *State ex rel.* v. *Brennan, Judge* (1952), 231 Ind. 492, 497, 109 N. E. 2d 409,

> "It frequently has been held by this court that where a court has general authority over a class of cases or a general subject, a ruling or order made is not void, although it may be erroneous. The power to decide at all carries with it the power to decide wrong as well as right. . . ."

18. Acts 1953, ch. 112, §1908, p. 295, being §8-108, Burns' 1953 Replacement.

The remedy for an erroneous decision is by appeal, and the extraordinary remedies of mandate and prohibition should not be used as a short cut for appeal. *State ex rel. Collins* v. *Lake Superior Court* (1954), 233 Ind. 536, 121 N. E. 2d 731.

Other contentions raised by the parties, not necessary to our decision herein, have not been discussed.

The temporary writ heretofore issued is dissolved and the permanent writ is denied.

Bobbitt, J., concurs;

Arterburn, J., concurs in result;

Landis, J., concurs in result with opinion.

Achor, C. J., concurs in opinion written by Landis, J.

OPINION CONCURRING IN RESULT

LANDIS, J.—I concur in the result of the opinion of Judge Jackson dissolving the temporary writ of mandate and prohibition, but do so for different reasons.

The record shows beyond dispute that on November 14, 1961, relator's attorneys filed a petition with respondent court seeking an order transferring relator from Methodist Hospital in the City of Indianapolis to Larue D. Carter Memorial Hospital in said city. Said transfer was requested by relator for the reason that the Carter Hospital offered relator therapeutic and rehabilitative services which were not available at Methodist Hospital.

The filing of this petition with respondent court asking for certain affirmative relief from such court in my judgment amounted to a general appearance and precluded relator from subsequently raising in his complaint filed in respondent court on December

20, 1961 (to set aside the judgment of 1957), and in his original action filed in this Court on January 22, 1962, the question of the jurisdiction of respondent court over the person of relator.

The following steps have been held to constitute a full general appearance: the filing of an answer on the merits, the filing of a demurrer, filing motion for change of venue, filing motion to publish depositions, filing motion to strike out a cross-complaint for want of service of process on plaintiff, filing cross-complaint demanding affirmative relief, appearing to a motion and arguing the merits, and the appearance in partition proceedings to object to a report of sale. See: Cases collected in 3 I. L. E., Appearance, §4, p. 6; and Lowe's Revision of Works' Indiana Practice, Vol. 1, §11.29, p. 321.

A general appearance is one made for the purpose of taking some action which recognizes the jurisdiction of the court over the defendant. It is either express or arises by implication from the defendant seeking, taking or agreeing to some step or proceeding in the cause recognizing the jurisdiction over him. On the other hand, in a special appearance the first step taken is to file a motion or plea contesting the jurisdiction of the court over the person of the defendant.

In the case before us while relator in his petition of November 14, asking respondent court to transfer him from one hospital to another for therapeutic reasons did recite that he intended thereafter to attempt to remove the guardian, no allegation was therein made suggesting respondent court was without jurisdiction in any respect whatever. By submitting himself to respondent court and asking such court to grant him affirmative relief, in my judgment relator has

subjected himself to the rules of waiver and estoppel and must therefore be deemed precluded from raising thereafter in the court below or this Court the question of the respondent court's jurisdiction over his person.

There is also a serious question of unreasonable delay and laches in this case. We have heretofore held that actions equitable in nature such as original actions of mandate and prohibition must be expeditiously filed. *State ex rel. Hashfield* v. *Warrick Cir. Ct.* (1961), 242 Ind. 318, 321, 178 N. E. 2d 734, 735; *State ex rel. American Fletcher etc.* v. *Lake S. Ct.* (1961), 242 Ind. 118, 127, 175 N. E. 2d 3, 8; *State ex rel. City of Marion et al.* v. *Grant Cir. Ct.* (1959), 239 Ind. 315, 320, 157 N. E. 2d 188, 191. See also: *Harvey* v. *Rodger* (1926), 84 Ind. App. 409, 421, 143 N. E. 8, 11.

The temporary writ of mandate and prohibition should accordingly be dissolved, and the permanent writ denied.

Achor, C. J., concurs.

NOTE.—Reported in 182 N. E. 2d 416, 422.