**Tamara Bowlus MYERS,**
**Appellant–Plaintiff,**

v.

**Donald R. MOYARS, individually, C. Al Lindsay in his capacity as the Sheriff of Warren County, Indiana and Randy Brenner, Don Andrews and James E. Lanham in their capacities as the Warren County Board of Commissioners, Appellees–Defendants.**

**No. 79A05–9510–CV–424.**

Court of Appeals of Indiana.

July 18, 1996.

Rehearing Denied Sept. 18, 1996.

Robert O. Williams, Williams Law Offices, Covington, for Appellant.

Thomas H. Busch, Hoffman, Luhman & Busch, Lafayette, for Appellees.

Susan B. Tabler, Pamela V. Keller, Ice, Miller, Donadio & Ryan, Indianapolis, for Amicus Curiae.

CHEZEM, Judge.

### Case Summary

Plaintiff–Appellant Tamara Bowlus Myers ("Myers") appeals the granting of a motion to dismiss her complaint against Defendants–Appellees Donald Moyars, individually, C. Al Lindsay in his capacity as the Sheriff of Warren County, and the Warren County Board of Commissioners (collectively, "Warren County"). We reverse.

### Issues

Myers presents two issues for our review which we restate as follows:

I. Whether Title VII of the Federal Civil Rights Act of 1964 precludes a 42 U.S.C. § 1983 claim by a public employee; and,

II. Whether the failure to exhaust administrative remedies requires the dismissal of a 42 U.S.C. § 1983 claim.

### Facts and Procedural History

Myers was hired as a jail officer for the Warren County Sheriff's Department on March 5, 1992. She was discharged from her employment on April 13, 1992. Myers filed a complaint, alleging discrimination and harassment, with the Indiana Civil Rights Commission on June 24, 1993. Because Myers filed her complaint over fourteen months after the alleged discriminatory acts (thus well beyond the ninety-day period), the Indiana Civil Rights Commission administratively dismissed the complaint in August of 1993. Myers did not seek judicial review of that dismissal. Likewise, she did not file a charge with the United States Equal Employment Opportunity Commission. Her three hundred days to do so elapsed in February of 1993.

On April 12, 1994, Myers filed a complaint against Warren County alleging (1) that she was discharged as a result of gender discrimination, citing 42 U.S.C. § 1983, and (2) that she suffered sexual harassment, citing 42 U.S.C. § 2000e and Indiana Code § 22–9–1–1. Myers abandoned the remedies of the second count. Consequently, only the § 1983 claim remains.

Warren County filed an answer raising two defenses: (1) preclusion of the § 1983 claim by Title VII of the Federal Civil Rights Act of 1964, and (2) failure to exhaust administrative remedies. Warren County then filed a motion to dismiss. Myers filed her response. Although not specifying the ground upon which he relied, the trial judge granted Warren County's motion and dismissed each defendant. Thereafter, the trial judge denied Myers' motion to correct errors.

In the ensuing appeal, the Association of Indiana Counties, Inc. ("Association") filed an Amicus Curiae brief in support of Warren County.

### Discussion and Decision

#### I. Preclusion of § 1983 Claim

■■■ The standard of review for the granting of a motion to dismiss is twofold. All facts in the plaintiff's complaint must be taken as true, and every reasonable inference and intendment must be drawn in her favor from the alleged facts. *Stevens v. Dept. of Public Welfare*, 566 N.E.2d 544, 546 (Ind.Ct. App.1991), *reh. denied, trans. denied.* "On appellate review, the trial court's judgment can be sustained on any theory or basis found in the Record." *Id.*

■■■ Myers argues that Title VII of the Federal Civil Rights Act of 1964 does not preclude a § 1983 claim by a public employee. For support, she cites *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299 (7th Cir.1985), and *Stoner v. Department of Agriculture*, 846 F.Supp. 738 (W.D.Wis.1994).

In contrast, Warren County and the Association contend that in enacting the 1991 amendments to Title VII, Congress implicitly preempted all parallel remedies for employment discrimination on the basis of gender against state and local governments. Their argument rests primarily upon the reasoning of *Marrero–Rivera v. Department of Justice of Commonwealth of Puerto Rico*, 800 F.Supp. 1024, 1031 (D.P.R.1992), *aff'd*, 36

F.3d 1089 (1st Cir.1994) and *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

Recently, several courts have taken the opportunity to address this issue in light of the 1991 amendments to the Civil Rights Act. *See Annis v. County of Westchester,* 36 F.3d 251 (2d Cir.1994); *Beardsley v. Webb,* 30 F.3d 524 (4th Cir.1994); *Wilson v. UT Health Center,* 973 F.2d 1263, 1268 (5th Cir. 1992), *cert. denied, Hurst v. Wilson,* 507 U.S. 1004, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993); *Notari v. Denver Water Dept.,* 971 F.2d 585, 587 (10th Cir.1992); *Johnson v. City of Fort Lauderdale, Florida,* 903 F.Supp. 1520 (S.D.Fla.1995); *Lightner v. City of Ariton,* 884 F.Supp. 468 (M.D.Ala.1995); and *Stoner,* 846 F.Supp. 738. These courts have unanimously held that Title VII is not the exclusive remedy for discrimination claims against state or municipal employers where those claims arise from violations of constitutional or statutory rights. Indeed, the District of Puerto Rico has apparently changed its position on the issue since its *Marrero–Rivera* holding. *See Ribot Espada v. Woodroffe,* 896 F.Supp. 69, 71 (D.P.R.1995).

Having reviewed the above decisions—— many of which dealt with the same arguments which Warren County and the Association raise, we agree with Myers' view. While *Brown* lends strong support to Warren County's and the Association's argument, we are persuaded that Congress did not intend to supplant other federal civil rights remedies when it enacted the 1991 Amendments to the Civil Rights Act. Unlike the provision considered in *Brown,* an entirely new cause of action was not created by the 1991 Amendments. Rather, compensatory and punitive damages, as well as the opportunity for a jury trial, were added. Thus, while the comprehensive remedial scheme of Title VII was significantly expanded, the 1991 Amendments must be viewed against the backdrop of earlier additions to Title VII. Particularly instructive are the 1972 Amendments, which were not intended to supplant the preexisting remedy under § 1983 for discriminatory acts by state employers. The legislative history is clear on this issue. *See Keller v. Prince George's County,* 827 F.2d 952 (4th Cir.1987).

A court "should not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 107, 110 S.Ct. 444, 449, 107 L.Ed.2d 420. In light of this admonition, and Congress' intent to avoid supplanting § 1983 when it passed the 1972 Amendments to the Civil Rights Act, we find inapplicable the rule of statutory interpretation applied in *Brown.* Instead, we find sufficient indicia of congressional intent to conclude that the 1991 Amendments to the Civil Rights Act did not alter the prior state of the law.

## II. Exhaustion of Administrative Remedies

Myers argues that exhaustion of state administrative remedies, which is not required before bringing a § 1983 action in federal courts, *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), should likewise not be a prerequisite to bringing a § 1983 action in Indiana state courts. Warren County and the Association argue that exhaustion is required, and cite different case law.

We begin our discussion with *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), in which the United States Supreme Court held that a state notice of claim statute was preempted by the Supremacy Clause when the action was brought in state court. The Court reasoned that such a statute is problematic because it conflicts in both its purpose and effects with § 1983's remedial objectives, and because its enforcement in state court actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court. The Court further stated:

Congress enacted § 1983 in response to the widespread deprivations of civil rights in the Southern States and the inability or unwillingness of authorities in those States to protect those rights or punish wrongdoers. Although it is true that the principal remedy Congress chose to provide injured persons was immediate access to *federal* courts, it did not leave the protec-

tion of such rights exclusively in the hands of the federal judiciary, and instead conferred concurrent jurisdiction on the state courts as well.

*Felder,* 487 U.S. at 147–48, 108 S.Ct. at 2311–12 (citations omitted). The Court went on to state that given the evil at which the federal civil rights legislation was aimed, there is no reason to suppose that Congress meant to provide such individuals immediate access to the federal courts notwithstanding any provisions of state law to the contrary, yet contemplated that those who sought to vindicate their federal rights in state courts could be required to first seek redress with those government officials. *Id.*

Our supreme court has applied *Felder*'s holding and reasoning. *Kellogg v. City of Gary,* 562 N.E.2d 685, 689 (Ind.1990)(noting that a tort claim notice requirement is problematic because the enforcement of such a statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress); *see also Werblo v. Hamilton Heights School Corp.,* 537 N.E.2d 499 (Ind.1989). In the context of a § 1983 action, an exhaustion of administrative remedies requirement would present problems similar to those presented by a notice of claim requirement (*see Felder*). Thus, for the same reasons that a notice of claim requirement was deemed unacceptable in the § 1983 context, we are inclined to conclude that an exhaustion of administrative remedies requirement is also unacceptable in this limited context.

Our conclusion is bolstered by our recent statement, "[f]ederal substantive law controls, and any state laws or rules which inhibit the prosecution of a § 1983 action are preempted by the Supremacy Clause of the United States Constitution." *Slay v. Marion County Sheriff's Dept.,* 603 N.E.2d 877, 884 n. 3 (Ind.Ct.App.1992), *trans. denied.* Indeed, we have already noted that it was not necessary for a plaintiff "to exhaust State administrative and judicial requirements before pursuing a § 1983 claim." *Impink v.*

*City of Indianapolis,* 612 N.E.2d 1125, 1129 (Ind.Ct.App.1993).

As for Warren County's and the Association's argument in favor of requiring exhaustion of remedies, we point out that most of the authority they cite was written prior to the June, 1988 publication of *Felder,*[1] thus is considerably less persuasive in light of the change which *Felder* brought. The two post-*Felder* cases which they do cite are distinguishable in that neither dealt with a situation where the plaintiff did not exhaust administrative remedies. *Magnant v. Lane,* 582 N.E.2d 461 (Ind.Ct.App.1991), *trans. denied,* (citing with approval the *Thompson* exhaustion requirement); *Harlan Sprague Dawley, Inc. v. Department of State Revenue,* 583 N.E.2d 214 (Ind.Tax 1991). Their argument is further weakened in light of *Union Carbide Corp. v. State Board of Tax Commissioners of the State of Indiana,* 161 F.R.D. 359 (S.D.Ind.1993), in which the Southern District stated:

States may not impose exhaustion requirements on a federal cause of action brought in their own courts if exhaustion is not required in federal court. *Felder v. Casey,* 487 U.S. 131, 142–43, 108 S.Ct. 2302–09, 101 L.Ed.2d 123 (1988); *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402, 409–10 (7th Cir.1989), *aff'd,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).... The continued vitality of the Court of Appeals' holdings in *Thompson v. Medical Licensing Board,* 180 Ind.App. 333, 398 N.E.2d 679 (3d Dist.1979) (on petition for rehearing), and *New Trend Beauty School, Inc. v. Indiana State Board of Beauty Culturist Examiners,* 518 N.E.2d 1101, 1104 (Ind.App.2d Dist.1988), requiring exhaustion of federal causes of action (§ 1983 claims), is questionable following *Felder, supra,* and *Donnelly, supra.* The Indiana Tax Court's recent statement in *Harlan Sprague Dawley, Inc. v. Indiana Department of State Revenue,* 583 N.E.2d 214, 224 (Ind.Tax 1991), that exhaustion is re-

---

1. *Thompson v. Medical Licensing Board,* 180 Ind. App. 333, 398 N.E.2d 679 (1979), *trans. denied, cert. denied,* 449 U.S. 937, 101 S.Ct. 335, 66 L.Ed.2d 160; *May v. Blinzinger,* 460 N.E.2d 546 (Ind.Ct.App.1984); *State ex rel. Basham v. Medi-* *cal Licensing Board,* 451 N.E.2d 691 (Ind.Ct.App. 1983); *New Trend Beauty School, Inc. v. Indiana State Board of Beauty Culturist Examiners,* 518 N.E.2d 1101 (Ind.Ct.App. Feb.1988).

quired in § 1983 cases is best interpreted, considering the Court's cites, as based on the unique prohibition of the Tax Injunction Act of 1937, 28 U.S.C. § 1341 ...

*Id.* at 374, n. 21.

Five years ago, we addressed a case wherein the plaintiff exhausted her administrative remedies, thus at that time we explicitly did "not reach the assertion raised by [her] that *Werblo v. Hamilton Heights School Corp.* (1989), Ind., 537 N.E.2d 499 overrules *New Trend,* [518 N.E.2d 1101] by relying on *Felder*". *Stevens,* 566 N.E.2d 544, 547 n. 1. Today, we are squarely faced

with that issue and hold that the exhaustion of administrative remedies is not a prerequisite to bringing a § 1983 action in an Indiana state court.

Reversed.

DARDEN and BARTEAU, JJ., concur.