**James H. HIGGASON, Jr., Appellant–Plaintiff,**

v.

**Chris STOGSDILL, et al., Appellees– Defendants.**

No. 77A01–0403–CV–126.

Court of Appeals of Indiana.

Nov. 30, 2004.

James H. Higgason, Jr., Westville, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

James H. Higgason, pro se, appeals a grant of summary judgment in favor of all the defendants in the latest of what has become a steady stream of civil rights lawsuits filed from prison by Higgason. Those defendants, namely, Chris Stogsdill, Art Davis, Dave Thomson, Michelle Shake, and Lee Hoefling (collectively referred to as the Defendants), were employees at the Wabash Valley Correctional Facility (the WVCF). Upon appeal, Higgason challenges the grant of summary judgment.

We affirm.

The relevant facts are brief. On September 19, 2000, while incarcerated in the Secure Housing Unit (SHU) at the Indiana State Prison in Michigan City, Indiana, Higgason filed a civil rights complaint against the Defendants pursuant to 42 U.S.C. §§ 1983 and 1988. As indicated previously, the Defendants were all employed at the WVCF; Stogsdill was the law librarian, Davis and Thomson were counselors, Shake was a mailroom supervisor, and Hoefling was an administrative assistant. According to the complaint,

> [b]y their acts, inactions, practices and callous or deliberate indifference, the Defendants have denied or impeded Higgason's access to the courts. By their acts, inactions, practices and callous or deliberate indifference the Defendants have individually or in concert

prejudiced Higgason in that they are directly or indirectly responsible for the following civil rights complaints being dismissed.

*Appellees' Appendix* at 2. The pleading then went on to identify five civil rights actions filed by Higgason that were allegedly dismissed as a result of the complained-of behavior. The Defendants' motion for summary judgment was granted.

We review the ruling on a summary judgment motion utilizing the same standard used by the trial court. Summary judgment is not appropriate unless the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Reeder v. Harper*, 788 N.E.2d 1236 (Ind.2003). When conducting the review, all facts and resulting reasonable inferences are construed in favor of the nonmoving party. *Reeder v. Harper*, 788 N.E.2d 1236. Also, we limit our review to those materials designated to the trial court. T.R. 56(H).

We begin our analysis by noting that Higgason has, to put it mildly, an extensive history of initiating grievance procedures and filing lawsuits while incarcerated. For instance, between December 1997 and March 2003, Higgason filed 164 complaints through the Offender Grievance Program at the WVCF, which led to the filing of 19 grievances. Also, we note that Higgason has initiated numerous lawsuits against prison officials and employees. In all, it appears that Higgason has initiated at least thirty-six separate appeals in this court, and we find him listed as having filed at least fifteen separate lawsuits in federal court. We do not mean to suggest by citing these numbers that there is a limit to the number of cases incarcerated individuals may file. Rather, we cite these to illustrate the point that Higgason is no stranger to judicial and quasi-judicial pro-

ceedings and the rules by which such proceedings are governed. The underlying action was instituted in a prison setting and thus subject to resolution by way of the procedures in place to resolve such controversies. In fact, Higgason initiated those administrative complaints, but filed suit in an Indiana state court before they were allowed to run their course. The State contends that Higgason's action, therefore, should be dismissed as premature because he failed to exhaust his administrative remedies. We must decide whether the exhaustion rule applies here.

■ We note first that Higgason's complaint asserts a claim under 42 U.S.C. § 1983. In *Myers v. Moyars*, 667 N.E.2d 1120, 1124 (Ind.Ct.App.1996), *trans.* denied, this court held, "the exhaustion of administrative remedies is not a prerequisite to bringing a § 1983 action in an Indiana state court." That holding followed an analysis focusing on a United States Supreme Court decision, *i.e.*, *Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988). In *Felder*, the Court held that a state "notice of claim" statute was preempted by the Supremacy Clause when a § 1983 action was brought in state court. That conclusion followed an analysis of the prosecution of § 1983 claims in federal courts, and noted specifically the conclusion that there should be no impediment to § 1983 actions in state court that do not also exist in federal court. We explained it thusly:

> Congress enacted § 1983 in response to the widespread deprivations of civil rights in the Southern States and the inability or unwillingness of authorities in those States to protect those rights or punish wrongdoers. Although it is true that the principal remedy Congress chose to provide injured persons was immediate access to federal courts, it did not leave the

protection of such rights exclusively in the hands of the federal judiciary, and instead conferred concurrent jurisdiction on the state courts as well.

*Felder,* 487 U.S. at 147–48, 108 S.Ct. at 2311–12 (citations omitted). The Court went on to state that given the evil at which the federal civil rights legislation was aimed, there is no reason to suppose that Congress meant to provide such individuals immediate access to the federal courts notwithstanding any provisions of state law to the contrary, yet contemplated that those who sought to vindicate their federal rights in state courts could be required to first seek redress with those government officials. *Id.*

Our supreme court has applied *Felder's* holding and reasoning. *Kellogg v. City of Gary,* 562 N.E.2d 685, 689 (Ind. 1990) (noting that a tort claim notice requirement is problematic because the enforcement of such a statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress); *see also Werblo v. Board of Trustees of Hamilton Heights School Corp.,* 537 N.E.2d 499 (Ind.1989). In the context of a § 1983 action, an exhaustion of administrative remedies requirement would present problems similar to those presented by a notice of claim requirement (*see Felder*). Thus, for the same reasons that a notice of claim requirement was deemed unacceptable in the § 1983 context, we are inclined to conclude that an exhaustion of administrative remedies requirement is also unacceptable in this limited context.

*Myers v. Moyars,* 667 N.E.2d at 1122–23. Therefore, a State notice of claim requirement was held not to apply to a § 1983 action because such would frustrate Congress's intent in enacting the legislation, which it did without including a notice of claim provision. The landscape has changed, however, since *Myers* was decided.

■ In the Prison Litigation Reform Act of 1995 (the PLRA), Congress amended 42 U.S.C. § 1997e(a) to require prisoners to exhaust "such administrative remedies as are available" before filing a § 1983 action suing over prison conditions. Subsequent cases construing the PLRA have clarified that the exhaustion requirement is both ironclad and sweeping in scope. *See, e.g., Booth v. Churner,* 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) ("Congress's imposition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process.... Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief sought through the administrative procedures"). The significance of the PLRA and cases construing it is that Congress and federal courts have now made it perfectly clear that, notwithstanding the purpose of § 1983, prisoners must exhaust their administrative remedies before filing a lawsuit complaining of prison conditions. Therefore, *Felder* is no longer good law on the question of exhaustion with respect to § 1983 lawsuits filed by prisoners. As set out above, our opinion in *Myers* to the effect that exhaustion is not required in § 1983 actions was premised upon the holding and rationale set out in *Felder.* Because *Felder* has now been effectively overturned by 42 U.S.C. § 1997e(a) and the cases construing it, the underpinnings of *Myers* have been entirely eroded. Therefore, we must revisit the question in view of those changes.

■ In *Myers* we identified two reasons for the conclusion that exhaustion was not required in a § 1983 action: (1) exhaustion

conflicted in both its purpose and effects with § 1983's remedial objectives; and (2) enforcing an exhaustion requirement in state court actions would frequently produce results that would be different than if the action had been filed in a federal court, where exhaustion was not required. *Myers v. Moyars,* 667 N.E.2d 1120. In fact, both reasons are rooted in Indiana state law's deference to federal law on the subject of § 1983 actions. As we stated in *Myers,* "[f]ederal substantive law controls, and any state laws or rules which inhibit the prosecution of a § 1983 action are preempted by the Supremacy Clause of the United States Constitution." *Myers v. Moyars,* 667 N.E.2d at 1123 (quoting *Slay v. Marion County Sheriff's Dep't,* 603 N.E.2d 877, 884 n. 3 (Ind.Ct.App.1992), *trans. denied* ). Even more to the point, we cited with approval a statement by the Southern District of Indiana that "States may not impose exhaustion requirements on a federal cause of action brought in their own courts if exhaustion is not required in federal court." *Myers v. Moyars,* 667 N.E.2d at 1123 (quoting *Union Carbide Corp. v. State Bd. of Tax Comm'rs of the State of Indiana,* 161 F.R.D. 359, 374 n. 21 (S.D.Ind.1993)). It seems, therefore, that the *Myers* holding merely tracked the federal law on that question.

As indicated previously, § 1997e(a) announced a change in the law applied by federal courts on the question of the need for exhaustion of remedies before a § 1983 claim may be brought. *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958, and other decisions have made it clear that exhaustion is now not only permissible, but indeed required before a prisoner may file a § 1983 action. We agree with the conclusion of the *Myers* panel that federal and state law should be in harmony on this point. Following enactment of the PLRA, however, this means that we reach a different result than did the *Myers* panel

on the question of exhaustion. Therefore, we hold that the applicable provisions of the PLRA, together with the cases construing those provisions, mean that before he or she may bring a § 1983 action in an Indiana state court, a prisoner must exhaust all administrative remedies.

In the instant case, the WVCF had a grievance procedure in place to resolve Higgason's complaints. That procedure, as reflected in an exhibit filed by the appellees, was and continues to be a five-step process. Rick Watkins, a WVCF grievance specialist, submitted an affidavit concerning Higgason's compliance with the grievance procedure. He reviewed a list of the grievances filed by Higgason and determined that Higgason had completed only steps one and/or two in all but one of the grievances. In that proceeding, Higgason filed a complaint because Hoefling allegedly refused to provide him with a copy of a deposition that had been taken of Higgason in relation to one of his lawsuits. The record reflects that Higgason pursued that claim through all five steps of the grievance process before his claim was denied. In no other single grievance did Higgason proceed beyond step 2. Thus, as to all claims other than the aforementioned grievance concerning the failure to provide Higgason with a copy of his deposition, the grant of summary judgment is affirmed for failure to exhaust his administrative remedies.

■ Turning now to the lone remaining claim, Higgason filed a lawsuit against prison officials in United States District Court for the Northern District of Indiana. The case was originally captioned *Higgason v. Hull,* but that was changed to *Higgason v. Wallace,* No.3:94cv228RM. On July 22, 1999, the defendants in that case deposed Higgason. Approximately six weeks later, a prison counselor provided

Higgason with a copy of the deposition, which included instructions to review the transcript for errors or changes, make notations reflecting such on a separate sheet of paper, sign, and return the document to the court reporter. At that point, Higgason demanded that the WVCF library photocopy his deposition and give it to him for his personal use. Higgason rejected the conditions the library placed upon granting that request. That refusal was one of the issues in *Higgason v. Wallace*. On January 5, 2000, the court recorded the following entry on the *Higgason v. Wallace* docket report:

> ORDER by Judge Robert L. Miller Jr. granting in part and denying in part motion for copy f transcript of 7/2/99 deposition [239–1]. *Court denies request that court order defendants to provide plaintiff with copy of deposition.* Court will not order stenographer to make changes but grants motion's 2nd request to the extent defendants are not to use any of the portions of deposition noted in Appendix A to plaintiff's motion for impeachment purposes without first obtaining leave of court[.]

*Appellees' Appendix* at 147 [emphasis supplied]. Therefore, during the discovery phase of *Higgason v. Wallace*, the District Court ruled against Higgason on this issue. The 7th Circuit Court of Appeals affirmed the District Court in all respects on November 26, 2001. It appears, then, that Higgason previously litigated and lost the claim that the WVCF was obligated to provide him a copy the deposition at no cost. Although the materials before us do not permit a review of the substance of that appeal, such does not alter the fact that Higgason had an opportunity to, and did, litigate the issue then in federal court and appealed after he did not prevail. Higgason's appeal was unsuccessful. In view of this, the Defendants contend the United States District Court ruled as a matter of law that the library was not required to provide Higgason with a copy of the deposition and, thus, that issue is barred by res judicata. We agree.

The doctrine of res judicata prevents repetitious litigation of disputes that are essentially the same. *Dawson v. Estate of Ott*, 796 N.E.2d 1190 (Ind.Ct.App. 2003). It consists of two distinct components, claim preclusion and issue preclusion. *Id.* Issue preclusion "bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action." *Brown v. Jones*, 804 N.E.2d 1197, 1203 (Ind.Ct.App.2004), *trans. denied*. Where issue preclusion applies, the previous judgment is conclusive with respect to those issues actually litigated and decided. *Id.*

The United States District Court for the Northern District of Indiana had jurisdiction over Higgason's lawsuit in *Wallace*. In the course of that proceeding, Higgason petitioned the court for an order compelling the prison library to provide a copy of his deposition at no expense to Higgason. The court determined that Higgason was not entitled to that relief and denied the request. Later, the court entered judgment against Higgason on the merits, and if Higgason did indeed appeal the ruling concerning the request to copy the deposition, he did not succeed. Thus, the court decided at that proceeding the question of whether the Defendants had a legal obligation to supply Higgason with a copy of the transcript at its expense. Our courts have generally accepted the rule that we must give full faith and credit to proceedings in federal courts. *Dawson v. Estate of Ott*, 796 N.E.2d 1190. There can be little doubt that Higgason seeks in the instant lawsuit to mount a collateral attack

on the federal court's ruling with respect to the deposition transcript. Higgason's claim is an attempt to obtain a different outcome than resulted in *Wallace*, namely, a determination that he was entitled to a copy of the deposition transcript at the library's expense. As our supreme court explained in *Indiana Dep't of Envtl. Mgmt. v. Conard*, 614 N.E.2d 916, 922 (Ind.1993):

> A collateral attack on a judgment is an attack made in a proceeding that has an independent purpose other than to impeach or overturn the judgment, although impeaching or overturning the judgment may be necessary to the success of the action. [*S*]*ee ... State ex rel. Lacy v. Marion Probate Court*, [243 Ind. 30, 35–36, 182 N.E.2d 416, 418 (1962)] (defined as attack on judgment outside legally prescribed procedure for judicial review, which attempts to deny its validity, and may necessitate relief from judgment).

We therefore conclude that any claim premised upon the contention that the library was obligated to provide for him a copy of the deposition transcript, as discussed in *Wallace*, is barred by the doctrine of res judicata. *See id.*

We have resolved all issues against Higgason. In reviewing the issues presented herein, we could not help notice the veritable mountain of litigation Higgason has generated during his incarceration. As noted previously, he has filed at least 67 grievances while incarcerated, and those and similar matters have spawned a seemingly endless series of lawsuits in state and federal courts. As was true in this case, we find ourselves revisiting issues that have already been decided by other courts in other proceedings. Although we do not wish to discourage prisoners' access to courts, we are aware that some prisoners are inclined to flood our courts with a prodigious number of lawsuits that are, by and large, entirely without merit. The problem is especially vexatious when it is compounded by the fact that those lawsuits often rehash the same issues over and over again. Such constitute a drain on the judicial system and amount to harassment of the same few defendants that simply cannot be ignored—or tolerated.

Recently, in *Parks v. State*, 789 N.E.2d 40 (Ind.Ct.App.2003), *trans.* denied, we addressed this problem and fashioned a screening mechanism aimed at curtailing the number of frivolous lawsuits filed by some prisoners. Drawing heavily upon provisions contained in the PLRA, *see* 28 U.S.C. § 1915, *et seq.*, designed to "discourage prisoners from filing claims that are unlikely to succeed", *Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1596, 140 L.Ed.2d 759 (1998), we crafted a screening mechanism intended to accomplish the same end. We note that, in apparent response to the *Parks* opinion, our legislature passed Ind.Code Ann. § 34–13–7–1 (West, PREMISE through 2004 2d Regular Sess.), which effectively codifies the conditions we placed upon Parks. I.C. § 34–13–7–1 applies only to causes of action filed after June 30, 2004. The instant cause of action was, of course, filed long before that. Nevertheless, we will use *Parks* as our guide and impose upon Higgason those same conditions. That is, in light of Higgason's propensity toward endless litigation, we will impose a screening mechanism to forestall future frivolous lawsuits.

Therefore, in addition to affirming summary judgment in favor of the Defendants and against Higgason, we impose the following conditions upon Higgason with respect to any future lawsuits that spring directly or indirectly from the adequacy of the procedures, materials, or access to the mail room and the law library at the

WVCF, and with respect to the copying of materials at the library's expense: (1) Prior to filing any such lawsuit, Higgason shall submit to the trial court a copy of the complaint he wishes to file. (2) Higgason shall also file a copy of all of the relevant documents pertaining to the ultimate disposition of each and every previous case instituted by Higgason against any of the same defendants or emanating, directly or indirectly, from complaints about procedures, materials, or access to the mail room and the law library at the WVCF, and with respect to the copying of materials at library expense. This includes, but is not limited to, the complaint, any motions to dismiss or motions for summary judgment filed by the defendants in those actions, the trial court order announcing disposition of the case, and any opinions issued in the case by any trial or appellate court. (3) Higgason shall file a legal brief, complete with competent legal argument and citation to authority, explaining to the court why the new action is not subject to dismissal by application of the doctrines of res judicata or law of the case. If, after reviewing these materials, the trial court determines that the proposed lawsuit is frivolous, malicious, fails to state a claim upon which relief may be granted, or is otherwise utterly without merit, the court shall dismiss the proposed complaint. (4) Higgason is specifically instructed to attach to such complaint a separate copy of the final paragraph of this opinion. *See Parks v. State,* 789 N.E.2d 40.

Judgment affirmed.

MATHIAS, J., and DARDEN, J., concur.