Lokmar Y. ABDUL–WADOOD,
Appellant–Plaintiff,

v.

Capt. BATCHELOR, et al.,
Appellees–Defendants.

No. 46A04–0608–CV–474.

Court of Appeals of Indiana.

April 30, 2007.

Lokmar Y. Abdul–Wadood Westville, IN, Appellant pro se.

## OPINION

MAY, Judge.

Lokmar Y. Abdul–Wadood, *pro se,* appeals the dismissal of his complaint against three employees of the Indiana State Prison: Captain Batchelor, and Lieutenants Kruper and Pittman (collectively, "the defendants"). We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

■ When reviewing the dismissal of a complaint for failure to state a claim, we accept the facts in the complaint as true. *Smith v. McKee,* 850 N.E.2d 471, 474 (Ind. Ct.App.2006). Therefore, we set out the facts as provided in Abdul–Wadood's complaint:

*Parties*

2. The Plaintiff is Lokmar Y. Abdul–Wadood. He is presently held at the Westville Control Unit ("WCU"). His prison number is....

3. The defendant is Captain Batchelor a ranking Officer at the Indiana State Prisoner [sic]. His principle [sic] responsibility is to oversee custody operations on the prison's segregation units.....

4. The defendant is Lt. Kruper, also a ranking officer at the Indiana State Prison ("ISP"). He oversees day to day custody operations on the ISP's segregation units.....

5. The defendant is Lt. Pittman a ranking officer assigned to oversee the Special Management Cells (SMU), a segregation Unit at ISP.....

6. That at all times relevant the named defendants have operated under the color of state law and they are being proceeded against in their individual and personal capacities.

*Facts*

7. That on or about Nov. 7, 2005, Plaintiff was transferred from the Westville Control Unit to the prison at Michigan City and placed on the ICellhouse Detention Unit (IDU).

8. That on January 23, 2006, by orders of the named defendants I was transferred from IDU to the Special Management Unit (SMU). I was placed in a cell in only my boxer shorts. Nothing but a mattress. No blanket. No soap to wash my hands before or after meals. No reading or writing materials. I was not allowed physical exercise. No tooth-

1. The trial court dismissed Abdul–Wadood's complaint before it was served on the defendants. Therefore, there is no appellee. The Indiana Attorney General filed a notice of noninvolvement in this matter and a motion asking us to correct our record by removing any reference to it as a party to this appeal. On April 20, 2007, we granted the State's motion and ordered the docket corrected.

paste or toothbrush. No toilet paper. Nor was I allowed to call or write my family, friends, or attorney.

9. That I informed the defendants that I needed my legal materials because I had pending court deadlines to meet or my legal cases would be dismissed. They still refused to provide me with these legal materials.

10. That I requested the opportunity for physical exercise while on the SMU Unit. The defendants would not permit me to do so.

11. That while confined on SMU I requested writing materials to write my family and friends, the defendants would not permit me to do so.

12. That while confined on SMU for a week I was feed [sic] only cold sandwichs [sic] and [illegible] in only my boxer shorts. I was not given a blanket in severe winter temperatures for three days.

13. That the defendants have knowingly and intentionally acted with the expressed purpose of denying Plaintiff his right to exercise, access to the courts, and wholesome nutrition to maintain a healthy body, while intentionally exposing him to harsh winter temperatures without adequate clothing to protect against the cold. They have also purposely prevented him from communicating with his family and friends.

(Complaint at 1–3.)[2] Abdul–Wadood asserts those actions by the defendants "violate Plaintiffs [sic] Eight [sic] and First Amendment rights." (*Id.* at 3.)

Abdul–Wadood filed his complaint with jury demand on June 23, 2006. That same day, the court dismissed his claim with prejudice.

**2.** Abdul–Wadood failed to include a copy of his complaint in his Appendix. We obtained

## DISCUSSION AND DECISION

■ The trial court reviewed Abdul–Wadood's complaint and dismissed it pursuant to Ind.Code ch. 34–58–1, which provides a screening procedure for inmate litigation. Section One of that chapter provides: "Upon receipt of a complaint or petition filed by an offender, the court shall docket the case and take no further action until the court has conducted the review required by section 2 of this chapter." Section 2 provides in pertinent part:

(a) A court shall review a complaint or petition filed by an offender and shall determine if the claim may proceed. A claim may not proceed if the court determines that the claim:

(1) is frivolous;

(2) is not a claim upon which relief may be granted; or

(3) seeks monetary relief from a defendant who is immune from liability for such relief.

Ind.Code § 34–58–1–2.

■ We review *de novo* a trial court's grant of a motion to dismiss pursuant to that statute. *Smith*, 850 N.E.2d at 474. When conducting our review, we accept as true the well-pleaded facts in the complaint and determine "whether the complaint ... contains allegations concerning all of the material elements necessary to sustain a recovery under some viable legal theory." *Id.*

In dismissing the complaint, the court found it would be unable to grant Abdul–Wadood's requested relief because "the plaintiff requests that the Court, by injunctive relief, order the defendants to change the D.O.C. policies." (App. at 3.)

Abdul–Wadood asserts his complaint alleged facts that, "if proven, clearly stated a

a copy of his complaint from the Clerk of the Laporte Superior Court.

colorable claim under § 1983." (Appellant's Br. at 2.) Even if that is true, Abdul-Wadood did not demonstrate the court had jurisdiction over his complaint.

Before pursuing a 42 U.S.C. § 1983 claim in state court, Abdul-Wadood had an obligation to exhaust his administrative remedies. *See Higgason v. Stogsdill,* 818 N.E.2d 486, 490 (Ind.Ct.App.2004), *trans. denied* 831 N.E.2d 740 (Ind.2005). As we explained therein, in 1995 Congress amended 42 U.S.C. § 1997e(a) to require prisoners to exhaust administrative remedies before filing a § 1983 action in federal courts to challenge prison conditions. *Id.* at 489. Federal courts have enforced that new provision strictly. *Id.* To harmonize federal and state decisions on this issue, Indiana state courts now require exhaustion of administrative remedies before inmates may file § 1983 claims related to prison conditions. *See id.*

Abdul-Wadood's complaint does not state, or even suggest, he pursued any administrative remedies prior to filing his action. While the State has not provided us with any evidence in this case, we presume the Indiana State Prison has a system for addressing prisoner grievances. *See, e.g., id.* ("In the instant case, the WVCF had a grievance procedure in place to resolve [the plaintiff's] complaints. That procedure, as reflected in an exhibit filed by the appellees, was and continues to be a five-step process."). *See also Zimmerman v. State,* 727 N.E.2d 714, 715–16 (Ind.Ct.App.2000) (noting prison had a direct appeal process from the decision of a Conduct Adjustment Board and a separate Department of Correction complaint process), *vacated* 741 N.E.2d 1249 (Ind.2000), *opinion issued* 750 N.E.2d 337 (Ind.2001).

In addition, prior to the alleged miscarriage of justice Abdul-Wadood suffered, our Legislature enacted P.L. 292–2001.[3] The Legislature described that Act as one "to amend the Indiana Code concerning corrections and to make an appropriation." 2002 Indiana Acts Vol. 1, P.L. 292–2001. The Act created a Department of Correction Ombudsman Bureau within the Department of Administration. Ind.Code § 4–13–1.2–3. The ombudsman is "to investigate and resolve complaints that the department of correction endangered the health and safety of any person, or that the department of correction violated specific laws, rules, or written policies." Ind. Code § 4–13–1.2–2. Therefore,

(a) The ombudsman may receive, investigate, and attempt to resolve complaints that the department of correction:

(1) violated a specific law, rule, or department written policy; or

(2) endangered the health or safety of any person.

However, the ombudsman shall not investigate a complaint from an employee of the department of correction that relates to the employee's employment relationship with the department of correction.

(b) At the conclusion of an investigation of a complaint, the ombudsman shall report the ombudsman's findings to the complainant.

(c) If the ombudsman does not investigate a complaint, the ombudsman shall notify the complainant of the decision not to investigate and the reasons for the decision.

Ind.Code § 4–13–1.2–5.

The Act also created a new chapter, Department of Correction Ombudsman

---

**3.** Senate Enrolled Act 373 passed both the House and the Senate in early 2001. The Governor vetoed it on May 11, 2001. The Legislature then passed the Act over veto on March 13, 2002.

Bureau, in the Correctional Standards and Procedures Article of Indiana Code Title 11, which deals only with Corrections. *See* Ind.Code ch. 11–11–1.5. Chapter 1 of that Article addresses the DOC "Grievance Procedure." *See* Ind.Code ch. 11–11–1. In light of the placement of those statutes, we conclude the Legislature intended to create an additional layer of administrative review for the protection of prisoners.

Abdul–Wadood filed his complaint in the trial court a mere six months after the events alleged to have violated his rights. This suggests he did not see any administrative proceedings through to a final conclusion. Therefore, the trial court did not have jurisdiction over his complaint and properly dismissed it. *See Higgason,* 818 N.E.2d at 490.

For this reason, we affirm the dismissal of Abdul–Wadood's complaint.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.